Daniel Birdsinger, Appellant, v. McCormick Harvesting Machine Company, Respondent.

1. Warranty. Where a warranty is general, such damages, only, are recoverable for its breach as the parties, standing chargeable with the knowledge of their legal rights and duties, may be deemed to have had in contemplation when making their contract.

2. Sale of Machine — When Damages for Personal Injuries Resulting from Defect Cannot Be Recovered in Action on Warranty. A provision in a contract of sale warranting a machine sold "to do good work, to be well made, of good materials, and to be durable if used with proper care," cannot be construed to relate to anything beyond the capacity of the machine to properly accomplish the purpose for which it was made and for an indemnity to the buyer against its failure in that respect. An assurance by the seller against accident to the person of the buyer consequent upon a breaking down of the machine cannot be implied from such language, and, therefore, the complaint in an action upon such warranty, to recover for personal injuries arising from a defect in the machine, is properly dismissed.

*Birdsinger* v. *McCormick Harvesting Machine Co.*, 95 App. Div. 621, affirmed.

(Argued January 22, 1906; decided February 6, 1906.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 3, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

This action was brought to recover for the breach of a warranty, given upon the sale by the defendant of a machine, and the damages asked were for a personal injury, sustained

by one of the purchasers as a result of its breaking down while in operation.

Upon the issue coming on for trial, the counsel for the plaintiff made a statement to the jury of the case and the following are the facts, which were stated and which are to be taken as admitted. The plaintiff's counsel stated that the defendant sold to the plaintiff and his brother a machine of its manufacture, known as a corn husker and shredder. In the use of this machine, the plaintiff had his hand caught between the rollers, called the snapping rollers; the office of which was to take the corn from the stalks as the stalks passed between the rollers. His hand was so mutilated that it was required to be amputated. The contract of sale contains the following provision:

"It is distinctly understood that the above mentioned machine is purchased subject to the following warranty, and no other, and the undersigned hereby acknowledge the receipt of a copy of the same. McCormick Harvesting Machine Co. warrants this machine to do good work, to be well made, of good materials, and to be durable if used with proper care," etc.

This action is brought upon this warranty; the plaintiff claiming to be entitled to recover for his injuries as consequential damages for a breach thereof. In operating the machine the plaintiff stood upon a platform directly in front of the machine about three feet back of these snapping rollers, into which he pushed the corn stalks. These rollers at times became clogged and, in order to clean them, it is necessary to stop the rollers. This is done by means of what is called, in the book of instructions, a safety lever; the arm of which is placed directly in front of the man operating the machine and underneath the board over which the corn stalks are pushed into the machine. By pushing forward slightly with his body upon this lever, the gearing to which these snapping rollers are attached, is thrown off, so that they cease to revolve and may be safely cleaned. Upon the day in question, the rollers having become clogged, the plaintiff pressed

upon the lever, the gearing was thrown off and the rollers ceased to revolve. He thereupon proceeded to clean out the rollers with his hand. Suddenly, without warning, the rollers began to revolve, his hand was caught and the injury occasioned. We will show that a part of this gearing, by which the rollers were made to revolve, had become broken; that this caused a bolt to slip out of its place, which thereupon became wedged in the gearing in such a way as to render ineffective this safety lever; that these rollers were thereby set in motion, notwithstanding the proper use of the safety lever.

Upon this opening of the plaintiff's counsel and upon the pleadings, which presented an issue upon similar allegations, the defendant's counsel moved for the dismissal of the complaint. The motion was granted, upon the ground that the plaintiff was not entitled to recover consequential damages for "personal injuries growing out of a defect of the machine." The judgment dismissing the complaint has been unanimously affirmed by the Appellate Division, in the third department, and the plaintiff has further appealed to this court.

*William J. Roche* and *Charles I. Webster* for appellant. The warranty in this case being of an article to be used for a particular purpose, is, in legal effect, a special warranty. (*Parks* v. *M. A. & T. Co.*, 60 Barb. 140; *Langridge* v. *Levy*, 2 M. & W. 519; *Schutt* v. *Baker*, 9 Hun, 556; *Brown* v. *Edington*, 2 M. & G. 279; *Paye* v. *Ford*, 12 Ind. 46; *S. D. & Co.* v. *Kidder*, 123 Ind. 528; *C. G. E. Co.* v. *Kellam*, 79 N. Y. Supp. 1019; *White* v. *Miller*, 71 N. Y. 118; *Beeman* v. *Banta*, 118 N. Y. 538; *Milburn* v. *Belloni*, 39 N. Y. 52.) This was, at least, such a warranty as permits the recovery of consequential damages under the rule that, where an article is sold for a particular purpose, such damages can be recovered as naturally flow from a breach of contract; and in this case the damages which are recoverable are those which would be coextensive with the damages allowed in actions for negligence. (Suth. on Dam. [2d ed.] § 675; Mayne on Dam. [6th ed.] 24; *Swain* v. *Schieffelin*, 134 N. Y. 471; *Wood* v.

*Anthony & Co.*, 79 App. Div. 111; *McMahon* v. *Field*, 7 L. J. Rep. 591; *Randall* v. *Newsom*, 46 L. J. Rep. 259; *Smith* v. *H. Co.*, 100 Ga. 163.) To recover consequential damages it is not necessary that the injuries sustained should be contemplated by the parties when the contract was made. (*Collins* v. *Stephens*, 58 Ala. 543; *Daughtery* v. *A. U. T. Co.*, 75 Ala. 168; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264; Mayne on Dam. 267; *Wilson* v. *Dunville*, L. R. [6 Ir.] 210.)

*Edwin Countryman, William S. Dyer* and *Jacob L. Ten Eyck* for respondent. The warranty was general, not special, and, therefore, the ordinary rule of damages applies which excludes damages for a personal injury sustained in using the machine. (2 Suth. on Dam. [2d ed.] § 670; *Voorhees* v. *Earle*, 2 Hill, 288; *Cary* v. *Greenman*, 4 Hill, 625; *Connor* v. *Dempsey*, 49 N. Y. 665; *Van Epps* v. *City of Schenectady*, 12 Johns. 436; *Ketcham* v. *Evertson*, 13 Johns. 359; *Hargous* v. *Ablon*, 5 Hill, 473; *Hoe* v. *Sanborn*, 36 N. Y. 98; *Miller* v. *Eno*, 14 N. Y. 598; *Hooper* v. *Story*, 155 N. Y. 172; *Passenger* v. *Thorburn*, 34 N. Y. 634.)

Gray, J. The question is sharply presented in this case whether the warranty, as expressed, covered anything more than the quality of the machine and its capacity, by reason of good construction, to do the work, properly, for which it was sold. Did it assure the purchaser as to anything more than was stated? I think not. The defendant warranted the machine "to do good work, to be well made, of good materials and to be durable if used with proper care." The warranty was an engagement, collateral to the contract, by which the seller assured to the buyer that the subject of the transaction of sale was as it was stated therein to be and the ordinary rule of damages upon the breach of a general warranty awards the difference between the value of the article as it had been represented to be and its actual value. The right to recover consequential damages, that is to say, those which are not the direct result of the breach and do not arise natu-

rally therefrom, will depend upon the terms of the warranty, considered in connection with the character of the article sold. The warranty may be special in its undertaking and entitle the purchaser to recover for the remoter consequences flowing necessarily from the breach ; or the article sold may be of such a character as that its answering the purpose of its sale is of the essence of the warranty and a failure in that respect will render the seller liable for the necessary consequences. For instances, sufficiently illustrative of such warranties, reference may be had to *Hoe* v. *Sanborn*, (36 N. Y. 98), where circular saws were warranted to be " of a good quality " and proved to be entirely worthless. It was held that " the warranty, whether considered as express or implied, was nothing more than a warranty of quality and the rule of damages for the breach of such a warranty is well settled to be the difference between the value of the goods, if they had corresponded with the warranty, and their actual value." In *Passinger* v. *Thorburn*, (34 N. Y. 634), where the defendant sold cabbage seed, warranted the same to produce Bristol cabbages and the warranty was untrue, the rule of damages was held to be the value of a crop of Bristol cabbages, such as ordinarily would have been produced that year ; deducting the expense of raising the crop and, also, the value of the crop actually raised therefrom. The opinion contains a review of the authorities upon the subject of the rule of damages and it was held that " the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract ; that is, must be such as might naturally be expected to follow its violation." It was said with respect to the case, that it might be " reasonably supposed to have been in the contemplation of the parties that if the seed was not Bristol cabbage seed, and would not consequently produce Bristol cabbage, that damage would necessarily accrue to the plaintiff and would be a natural consequence of such breach." The warranty was special in its nature. In *Borradaile* v. *Brunton*, (8 Taunt. 535), a chain cable was warranted to " last two years " and the warranty

was untrue.   The plaintiff was allowed to recover, as damages, the value of the chain and of the anchor, which was lost through the breaking of a link.   The judge held the warranty to be of the sufficiency of the cable to hold the anchor. In the words of Dallas, Ch. J., that was "of the very essence of the warranty."   There are cases of recoveries for personal injuries, as the results of breaches of warranty, which are based upon the distinction of the probable, if not almost certain, consequences entailed by a defective manufacture of the article sold; or of an inherently dangerous article sold as safe for use; in either of which cases, its ordinary use necessarily involved personal danger, as a matter of common knowledge.   Instances would be in the sale of a defectively made gun, or boiler; or of a poisonous article of food. (*Langridge* v. *Levy*, 2 Mees. & W. 519; *Cassidy* v. *Le Fevre*, 45 N. Y. 562; *Swain* v. *Schieffelin*, 134 ib. 471.)   The authorities, of course, make a distinction between cases, where there has been a mere breach of warranty, and cases where there has been a fraudulent representation as to the qualities of an article, or a fraudulent concealment of its unfitness for the buyer's purpose.   (See *Langridge* v. *Levy, supra.*)

It may be difficult to define the line of remoteness of damage; but it approaches to definiteness to say that, where the warranty is general, such damages, only, are recoverable as the parties, standing chargeable with the knowledge of their legal rights and duties, may be deemed to have had in contemplation, when making their contract, as the result of the warranty being untrue.   That which is an effect of the breach, in a certain sense, but is removed one stage from it, is not the primary, but the secondary, consequence of it.   This action is based upon the contract and in such a case, where there has been no fraud, the recovery is to be measured by a compensation to the vendee for the natural and proximate consequence of the breach by the vendor of his warranty, in the failure of the article to meet the representation as to its quality; which would be the difference between the value of the article as warranted and its actual value.

This machine was sold for the price of $230, and the contract of sale was specific, in excluding any other warranty than the one expressed ; namely, that it would do good work, that it was well made, of good materials and was durable if used with proper care. It cannot, with any reason, be said that such representations related to anything beyond the capacity of the machine to properly accomplish the purpose of husking and shredding corn. The inference is not permissible that the minds of the parties met upon any other idea, than that of the capacity of the machine, by reason of its good construction, to do good work and of an indemnity to the buyer against its failure in that respect. There was a warranty of the fitness of the machine for the purpose of the buyer and if it did not effectively husk corn and shred the corn stalk, or if it injured the ear of corn in its working, it would have failed in its purpose and it would be worthless, except as to what value the mere materials might possess. It is neither a sensible, nor a natural, conclusion for the mind to reach that the parties supposed, the buyers, that they were getting, the seller, that it was giving, an assurance against accidents to the person, possibly consequent upon a breaking down of the machine. An accident to the machine, when in operation, might, or might not, occasion personal injury ; but the language of this warranty, to the ordinary mind, conveys, neither expressly, nor impliedly, the intention to indemnify in such an event. Had it been stated that the machine was safe for use, or to similar effect, it would be clear that the parties had in mind the idea of danger to the operator and of some assurance against it. It would have been easy, and altogether natural, to have made the contract plain upon that point. No technical rule of the law requires the extension of the liability of the defendant to consequential damages and, in my judgment, it is the sounder doctrine to limit the construction of this contract and to hold the warranty to have been a general assurance of the serviceable quality of the machine. It was not otherwise special in its nature than as to fitness for the work and the vendees had no

right to rely upon it, as an assurance against damage, beyond what naturally might be expected to flow from its untruth.

The conclusion reached renders unnecessary the consideration of the other questions argued and I advise the affirmance of the judgment, with costs.

Edward T. Bartlett, J. (dissenting). I dissent from the judgment about to be entered, on the ground that this corn husker and shredder was designed for one purpose and could be used in no other work. I am unable to distinguish this case from the gun which exploded, the boiler which burst, or the rope which was deemed to have been strong and well made. In the gun case there was a recovery for personal injuries sustained, and in the other two cases a recovery for the value of property destroyed.

This case, in my opinion, is not to be distinguished in principle from *Mowbray* v. *Merryweather* (L. R. [2 Q. B. 1895], 640.) The plaintiffs, a firm of stevedores, contracted to discharge a cargo from the defendant's ship, the defendant agreeing to supply all necessary cranes, chains, etc., reasonably fit for that purpose. The defendant in breach of his agreement supplied a defective chain, which broke while being used, and in consequence one of the plaintiff's workmen was injured. The workman having recovered in an action brought against the plaintiffs, the latter sued the defendant to recover the damages so paid. In the Court of Appeal it was held that the plaintiffs' liability to pay compensation to their workmen was the natural consequence of the defendant's breach of contract, and such as might reasonably be supposed to have been within the contemplation of the parties when the contract was entered into ; and, therefore, the damages claimed were not too remote. The master of the rolls, Lord Esher, said at the opening of his opinion : "I have no doubt about this case, though we have now to determine the point raised for the first time. The action is brought for breach of a warranty given by the defendant to the plaintiffs. That such a warranty was given is not disputed. It was one

implied by law, but that appears to me to make no difference. It was to the effect that the chain in question was so far sound as to be sufficient for the work which the plaintiffs had to do as stevedores."

. In the case at bar the plaintiff claimed that a general warranty may be extended in its effects to cover the case in hand, and if not, a special warranty will be implied. I am of opinion that the general warranty may be extended to cover this case.

When the manufacturers of this machine warranted it to be, among other things, "*well made*," of "*good materials*" and "*durable*," they certainly, in view of the fact that this machine was designed for a single purpose only, must be held to have warranted that the safety lever, designed to arrest the motion of a portion of the machinery to enable the clogged rollers to be cleared by the hand of the operator, would so act as to enable the work to be safely done. In fact, within a month of the purchase of the machine the appliances of the safety lever broke while plaintiff was properly resting his weight upon the lever in the act of clearing the rollers, with the result that the rollers were suddenly released, started and he lost his right hand. Thus it clearly appears that the machine was not well made, of good material and durable as required by the warranty.

CULLEN, Ch. J., O'BRIEN, WERNER and HISCOCK, JJ., concur with GRAY, J.; EDWARD T. BARTLETT, J., reads dissenting opinion; CHASE, J., not sitting.

Judgment affirmed.