Ebbert et al. *v.* Philadelphia Electric Company, Appellant.

Argued October 14, 1936.

Before KELLER, P. J., CUNNINGHAM, BALD-

RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Richard A. Smith,* with him *Louis Wagner* and *Thomas J. Clary,* for appellant.

*C. Leo Sutton,* with him *Frank F. Truscott* of *Bell, Truscott, Henry & Sutton,* for appellees.

OPINION BY PARKER, J., April 15, 1937:

This is an action in trespass brought by Esther E. Ebbert and Edwin Lester Ebbert, her husband, against the Philadelphia Electric Company to recover damages for injuries suffered by the wife while she was operating a well known type of electric washing machine and wringer purchased from the defendant and manufactured by Altorfer Brothers Company. The plaintiffs each recovered a verdict and have a judgment. The defendant, the appellant from each judgment, complains of the refusal of its motions for judgments n. o. v. The appeals raise interesting questions as to the liability of a dealer to a purchaser for injuries sustained as a result of a mechanical defect in a machine.

The plaintiffs having the benefit of verdicts of a jury, the evidence must be viewed on these appeals in a light most favorable to plaintiffs and they must be given the

benefit of every fact and inference of fact deducible from such testimony. We will refer to the evidence accordingly. The machine, known as the ABC Washer and Wringer, was purchased from defendant on September 20, 1934, after it had been set up and demonstrated to the wife plaintiff in her home. The wringer, consisting principally of two rollers, was located on and attached to the top of the washer and could be moved on a swivel in a circle. When the purchase was made the defendant gave plaintiff a writing described as an appliance guarantee which provided in part as follows: "PHILADELPHIA ELECTRIC COMPANY guarantees the appliance leased hereunder (except radio) against defects in manufacture for a period of one (1) year from date hereof (or to the extent of the manufacturer's advertised guarantee if for a longer period), and will replace free, any part which, an examination by the Company, shall disclose to be defective ...... This guarantee does not cover parts which became inoperative through neglect or abuse."

Above the rollers there was a safety device operated by plates on each side of the machine on which there were conspicuously placed raised letters reading "Touch Release." These plates with a connecting top enclosed a mechanism designed to operate by a mere touch from either side. The intended effect of touching either plate was to cause the upper roller to immediately spring up three to four inches and thus release clothing, fingers or a hand that might be caught between the rollers.

Mrs. Ebbert used the machine on an average once a week until December 12, 1934, but had not had occasion before that time to use and had not used the safety device. On that date while running a bathrobe through the wringer, the tips of her fingers accidentally caught between the rollers. She touched the release plate with her other hand several times but the rollers

would not separate. Her hand was drawn into the rollers and was severely injured.

For the purpose of showing the cause of the failure of the rollers to release, the plaintiffs called Warren Taylor, a witness who had been a washing machine service man for eighteen years and who had examined this machine. The judge who tried the case, in an opinion filed, gave an accurate synopsis of that testimony in this language: "He testified that the safety device did not work because the cam shaft operated by the touch release bar was bent in such a way that it only engaged one of the release bars, which held the safety catches, and not the other. The machine contained two of these bars each connected with a safety catch at opposite ends of the inclosed chamber. If the machine functioned properly the cam shaft would draw these bars towards the center releasing the safety catch at each end, which in turn removed the pressure from the top roller and as a result the roller sprang upward. However, as the cam shaft was bent on one side, the pressure was released from only one end of the roller. Hence, this end sprang up one-half inch while the other end remained tight against the lower roller. The workings of this safety device were thoroughly explained to the jury and their foreman stated at the conclusion of the trial that they understood it. Taylor stated that it would not be possible to bend the cam shaft into its present position except by the use of tools. The shaft itself showed no marks of tools. He then stated that 'it looks to me as though it is a defect in the manufacture.' On cross-examination he was asked why the safety device worked properly at the time of sale yet failed to function at the time of the accident. His answer was 'that is a pretty hard question to answer. That may be on account of hitting it before that, a sudden jar would release the other side, because it does go over a little bit, it was not engaged but at the same

time it might have knocked over at that time.' Defendant presented no evidence in contradiction to his testimony." There were other pertinent facts to which we will refer at appropriate places in the discussion of the legal principles involved.

The plaintiffs averred as a basis of recovery (a) that the wringer was defective when delivered to them; (b) that the defendant warranted the electric washing machine and wringer attached were free from all mechanical defects and "that the same could be operated by the plaintiff Esther E. Ebbert with perfect ease and safety;" and (c) that as a result of mechanical defects the wife plaintiff was injured; and they claimed that they were entitled to recover in an action in trespass for the injuries to the wife.

(1) We will first give our attention to defendant's contention that the evidence was not sufficient to support the essential and elementary finding that the defect in the machine existed when it was delivered to plaintiffs. Unless there was evidence sufficient to support this conclusion plaintiffs' case must fail. While the salesman demonstrated the action of the safety device when he installed the machine and it then worked, he demonstrated from the opposite side of the wringer from that on which the wife plaintiff was standing when she was injured. The expert who examined the machine testified that the cam shaft was bent in such a way that when operated it engaged the release bar only on one side of the wringer. He stated that one side worked and the other did not. If the pressure was released from only one side and the trigger was bent and defective, it may well have been, as the expert suggested, that the roller would at times be released at both ends depending upon the place where the touch bar was contacted or the degree of pressure exerted. It must be borne in mind that the expert illustrated his statements as to the condition of the machine by reference to one of these ma-

chines exhibited to the jury. He also explained that the cam was bent in such a way as could only be accomplished with the use of tools, if the casting was perfect when installed, and that there was no evidence of the use of tools shown on the cam. It would seem that an expert would know after an examination whether it was a defective casting, improperly shaped, or one that had been bent by some force applied after it was manufactured.

Proof of the factum probandum we are considering may not be based upon mere conjecture or guess work (*Freedman v. Wagner & Karpeles*, 73 Pa. Superior Ct. 180), yet it was not necessary to exclude every other possible cause which the ingenuity of counsel might suggest: *Madden v. Great A. & P. Tea Co.*, 106 Pa. Superior Ct. 474, 162 A. 687; *Gallivan v. Wark Co.*, 288 Pa. 443, 456, 136 A. 223. We are not here limited to the bare statement of the expert, Taylor: "It looks to me as though it is a defect in the manufacture." Not only did the expert detail the evidence from which he drew his conclusion, but he described the condition and workings of the parts and explained them by reference to a model of the machine produced before the jury. The cases of *Fink v. Sheldon Axle & Spring Co.*, 270 Pa. 476, 113 A. 666, and *Zimmerman v. Weinroth*, 272 Pa. 537, 116 A. 510, cited by appellant, are therefore not in point. The test to be applied was whether the circumstances shown were such as would satisfy a reasonable and well balanced mind that the defective condition of the cam existed when the machine was delivered to plaintiffs: *Strobel v. Park*, 292 Pa. 200, 207, 140 A. 877. Taking into account the fact that the defendant offered no evidence in contradiction of plaintiffs' evidence we are convinced that the evidence was sufficient to meet the legal requirements for such proof.

(2) The prime legal question involved is whether the failure of defendant to furnish a machine free from mechanical defects in accordance with its express war-

ranty taken with certain representations of the defendant as to the safety device affords a legal basis for recovery for personal injuries in an action in trespass. While there are a number of distinct legal questions involved in answering the inquiry, such as liability on the warranty, extent of possible liability, and form of action, they are so related that they may be discussed together. By way of proof the plaintiffs relied on the so-called "Appliance Guarantee" and the testimony of Mrs. Ebbert to the effect that at the time of the purchase the agents of the defendant demonstrated to her the operation of the safety device explaining the advantage of the instant action of the safety touch release, that it would operate and prevent damage if anything was caught in the rollers and that injury to property or person would be avoided.

Is an action in trespass available to the plaintiffs to remedy the wrongs alleged to have been suffered by them? We are dealing with a state of facts where a machine containing a defective part was furnished by a dealer to a purchaser in the face of a warranty by the dealer that the article was free of mechanical defects and with full knowledge of the uses and purposes to which the machine would be devoted by the plaintiffs. The defect was one which could have been discovered by a reasonable inspection and the dealer, by its written guarantee and representations, assumed the responsibilities and duties usually placed on the manufacturer. The plaintiffs' claim, however, is not based on an intentional wrong committed by the defendant but rather upon the failure of the defendant to know facts which it pretended to know. The representations were therefore negligent and not intentional misrepresentations.

In the case of *Erie City Iron Works v. Barber & Co.*, 102 Pa. 156, it was held that where a workman undertook to manufacture a certain article, a steam boiler,

knowing where it was to go and what work it was
expected to do, and so carelessly and negligently con-
structed the article that it was not able to do the work
and burst, damaging adjacent property, he was liable
in an action on the case for the resulting damage. The
same action reached that court a second time (106 Pa.
125) where the form and the essentials of such pro-
cedure were carefully considered. There the action was
deceit and the court, speaking through Justice TRUNKEY,
said (p. 139) : "If there was such a defect, it was im-
possible that he could know it was good. If it was
defective it was not good. And the pith of the instruc-
tion is that if Selden represented the boiler to be good,
and in fact it was bad, the defendant is liable for deceit.
In order to make a person liable for a fraudulent repre-
sentation, he must have been guilty of some moral
wrong; legal fraud, unaccompanied by moral fraud, will
fail to support the action. But though it is necessary
that the defendant in making the false statement should
have committed some moral turpitude, it is not neces-
sary to show that he knew as a fact what he stated
was false. If he made the representation not knowing
it to be true, or without reasonable and probable grounds
on which to suppose it to be true, he acted fraudulently.
When a man having no knowledge whatever upon a
subject takes it upon himself to represent a certain
state of facts to exist, he does so at his peril, and if
it be done either to secure some benefit to himself or
to deceive another, he is guilty of fraud. By assuming
to have knowledge of a material fact when he is con-
scious that he has not, and representing it as of his
own knowledge, in such manner as to import knowledge
in him thereof, he commits a moral wrong, similar in
character as if he knew the representation to be untrue."

In the case of *Nock v. Coca Cola B. Wks. of Pgh.*, 102
Pa. Superior Ct. 515, 156 A. 537, we held that an action
either in assumpsit or in trespass would lie to recover

damages suffered by reason of the sale of deleterious foods. Also, see *Boston Woven Hose & Rubber Co. v. Kendall,* 178 Mass. 232, 59 N. E. 657, 51 L. R. A. 781, and 1 Williston on Sales §§194-197, where the mixed nature of liability arising out of warranty is considered.

The case of *Lamberton v. Dunham,* 165 Pa. 129, 30 A. 716, is to be distinguished from the Erie Iron Works case by the fact that in the Lamberton case the representation was gratuitous on the part of the person who made it while here the representation was given in the course of the defendant's business and was a part of the contract of sale. It seems clear to us that an action of trespass on the case was properly employed by the plaintiffs. After all, we are not so much concerned with the name of the action as with finding a remedy for a wrong. In the present case, just as in the celebrated case of *MacPherson v. Buick Motor Co.,* 217 N. Y. 382, 111 N. E. 1050, to which we will later refer, the defect could have been discovered by reasonable inspection, yet there was no claim that the defendant knew of the defect and wilfully concealed it. Since we are here concerned with negligent rather than intentional misrepresentations, we should not ignore the principles of the law of negligence. It is true that negligent misrepresentations are regarded as an extension of the law of deceit and are described as a species of fraud. Yet when we are concerned with an unintentional but negligent misrepresentation it is the concept of negligence that predominates. Further support for our conclusions will be found in the cases to which we will later refer.

May the plaintiffs recover consequential damages for personal injuries for breach of the warranty which was part of the contract of sale? It is stated by Professor Williston, 2 Williston on Sales, §614a, p. 1545: "The general principle allowing consequential damages naturally resulting from a breach of warranty is not much disputed, but the question of what consequential

damages are too remote is not always decided in the same way. Especially where personal injury is caused by the defect in the warranted article to a third person, and the buyer is compelled to pay damages to the person injured, it is disputed whether the buyer can recover these damages from the seller. By the weight of authority he is allowed to do so, and this result seems correct, at least if the defect in the thing sold was of a sort likely to cause the injury which in fact took place. The principle does not seem essentially different where the injury is to the buyer himself. If there is a difference, the liability of the seller seems clearer, but even in this case some courts hold that the damages are too remote."

In Pennsylvania damages beyond the difference between the value of the articles sold and as warranted have been allowed. In *Jones & Laughlin Steel Co. v. Wood*, 249 Pa. 423, 94 A. 1067, an action in assumpsit, the defendant was held liable not only for the cost of new elbows which were not as warranted, but also for the cost of removing the defective elbows and installing new ones. The court there said (p. 432): "An implied warranty will arise if goods are purchased for a particular use, of which the buyer informs the seller, and the rule is especially applicable where the seller is the manufacturer of the article sold." In addition the views of the lower court were approved where it was said (p. 428): "The general rule requires that compensation shall be made by the party in default for all the injurious results of a breach of contract that may reasonably be supposed to have been in the *contemplation of the parties at the time when the contract was made.*" (Italics supplied.) As was pointed out by Judge KELLER in *Budd v. Mutchler*, 98 Pa. Superior Ct. 420, where the claim was for the cost of replacing defective cement blocks, damages are not limited to the cost of new blocks, "but that measure [clause 7, §69 of the

Sales Act] is, by its very terms to be applied only 'in the absence of special circumstances showing proximate damage of a greater amount,'" and is the measure that was fixed by clause 6, §69 of the Sales Act (69 PS 314). Also, see *Griffin v. Metal Product Co.*, 264 Pa. 254, 107 A. 713.

We have also in this jurisdiction those cases in which damages have been allowed for breach of an implied warranty to supply food stuffs fit for human consumption and the breach resulted in personal injury: *Catani v. Swift & Co.*, 251 Pa. 52, 95 A. 931, an action in trespass for death of plaintiff's husband from eating diseased pork; *West v. Katsafanas*, 107 Pa. Superior Ct. 118, 162 A. 685, in assumpsit; *Campbell v. G. C. Murphy Co.*, 122 Pa. Super. 342, 186 A. 269, in trespass; *Nock v. Coca Cola B. Wks. of Pgh.*, supra, in assumpsit; *Madden v. Great A. & P. Tea Co.*, supra, in trespass.

In other jurisdictions we find a large number of cases supporting the right of recovery for personal injuries where reliance was placed on a warranty expressed or implied and the injuries were such as could be held to be within the contemplation of the parties when the sale was made. In the leading case of *Mowbray v. Merryweather*, L. R., 2 Q. B. 1895, recovery was allowed where a chain furnished by defendant for unloading a ship broke, injuring plaintiff's stevedores. In *Boston Woven Hose & Rubber Co. v. Kendall*, supra, the defendant, vendor and manufacturer of a boiler, undertook to supply a boiler which would withstand a pressure of one hundred pounds and the buyer, the plaintiff, was permitted to recover damages which plaintiff was compelled to pay to its employees occasioned by the bursting of the boiler. Mr. Justice HOLMES, then Chief Justice of Massachusetts, there said: "Whether the false warranty be called a tort or a breach of contract the consequence which ensued must be taken to have been contemplated, and was not too remote." The

opinion of Judge CARDOZO, now a Justice of the Supreme
Court of the United States, in *MacPherson v. Buick
Motor Co.*, supra, is enlightening. It was there said
(p. 389) : "We hold, then, that the principle of *Thomas
v. Winchester* is not limited to poisons, explosives, and
things of like nature, to things which in their normal
operation are implements of destruction. If the nature
of a thing is such that it is reasonably certain to place
life and limb in peril when negligently made, it is then
a thing of danger. Its nature gives warning of the con-
sequences to be expected. If to the element of danger
there is added knowledge that the thing will be used
by persons other than the purchaser, and used without
new tests, then, irrespective of contract, the manu-
facturer of this thing of danger is under a duty to
make it carefully. That is as far as we are required to
go for the decision of this case. There must be knowl-
edge of a danger, not merely possible, but probable."
In that case the injury was due to a defective wheel
on an automobile which wheel the defendant had pur-
chased from a reputable manufacturer and the plaintiff
purchased the car from a dealer and not directly from
defendant. In *Dushane v. Benedict,* 120 U. S. 630, 7 S.
Ct. 696, the Supreme Court said: "The damages re-
coverable for a breach of warranty, or for a false repre-
sentation, include all damages which, in the contem-
plation of the parties, or according to the natural or
usual course of things may result from the wrongful
act." In that case a dealer sold rags represented as
clean rags which in fact were infected with smallpox
and caused smallpox to break out among plaintiff's
workmen. This was held sufficient to support a claim
for personal injuries. While the judgment in that case
was reversed, it was sent back for a new trial on
account of the admission of incompetent evidence. Also,
see *Tyler v. Moody,* 111 Ky. 191, 63 S. W. 433, 54 L. R.
A. 417; *London G. & A. Co. v. Starit Scale Co.,* 322 Mo.

502, 15 S. W. (2d) 766, 64 A. L. R. 936; *Becker Roofing Co. v. Pike* (Ala.), 160 So. 692; *F. Becker Asphaltum Roofing Co. v. Murphy* (Ala.), 141 So. 630; *Wells v. Oldsmobile Co. of Ore.*, 147 Ore. 687, 35 P. (2d) 232; 24 R. C. L. §541, p. 261.

Now it will be noted that we have here an express warranty against mechanical defects and the dealer thereby assumed the responsibilities of the manufacturer for the working condition of the wringer. When the defendant dealer sold this machine and warranted it to be free from mechanical defects and at the same time represented that the safety device was specially installed on the machine for the purpose of avoiding accidents, it necessarily knew that reliance would be placed upon the proper working condition of such wringer. It was therefore clearly within the contemplation of the parties that the machine would so operate that it would upon a mere touch release the rollers and avoid serious injury. The manufacturer and the dealer, by putting out a machine marked as this one was, recognized a fact well known to all that persons frequently catch clothing and parts of the hand in rollers. It is therefore idle to suggest that it was not within the contemplation of the parties that if the machine was defective those using it would be liable to injury. In view of the express warranty as to the condition of this wringer, it is not necessary to decide whether a duty of inspection would have been cast upon the dealer if he had not given an express warranty.

The case of *Birdsinger v. McCormick Harvesting Machine Co.*, 183 N. Y. 487, 76 N. E. 611, 3 L. R. A. (N. S.) 1047, although somewhat similar to the case we are considering is distinguished by the fact that no special representations were made. The court in that case said: "Had it been stated that the machine was safe for use, or to similar effect, it would be clear that the parties had in mind the idea of danger to the

operator and of some assurance against it." Even then that case was decided by a divided court and a strong dissenting opinion was written. Another case refusing compensation on the ground that the personal injuries suffered in such cases were too remote to fasten liability on the seller is *Kress v. Lindsey*, 262 Fed. 331, 13 A. L. R. 1170.

The fact that the machine was sold under a trade name does not affect the express warranty or guarantee present here: *Wolstenholme v. Randall*, 295 Pa. 131, 144 A. 909; *Madison-Kipp Corp. v. Price Battery Corp.*, 311 Pa. 22, 166 A. 377.

The defendant also suggests that the defendant dealer was under no duty to discover a hidden defect in the machine of which he was ignorant since, as the defendant claims, the machine was not inherently dangerous (24 R. C. L. §802, p. 509). This contention overlooks two facts. The defendant expressly guaranteed the machine to be free of defects. Again, the use to be made of the machine and the danger to the person operating the machine were in the contemplation of the parties when the appliance was sold. As Mr. Justice CARDOZO pointed out in the MacPherson case, supra, this safety appliance if negligently made was reasonably certain to place the operator in peril and the wringer consequently was a "thing of danger."

The defendant next argues that the liability of the defendant is limited by the guarantee to the expense of replacing the defective part and relies on the case of *Hill & MacMillan, Inc., v. Taylor*, 304 Pa. 18, 155 A. 103. In that case the contract not only required the seller to replace defective parts, but specifically provided that "the purchaser agrees that no other claim for loss or damage of any description will be made against Hill & MacMillan, Inc." Here there was no such limitation. There was not only a warranty that the article was free from mechanical defects, but a

representation as to the efficiency of the safety device with full appreciation of the dependence that would be placed on it. Under the terms of the contract the plaintiffs were entitled to have an article free from mechanical defects. The language of the contract, when read in the light of the circumstances and facts surrounding the transaction and the position of the parties, does not justify the construction contended for by the appellant. If the defendant desired to limit its liability, it could have provided in the contract for liquidated damages, or by language unmistakable in terms it might have relieved itself from any liability as in the case last cited. The defendant not only prepared the contract, but failed to limit its liability. The language here used cannot be construed as a limitation of liability: *Sanford v. Brown Bros. Co.*, 208 N. Y. 90, 101 N. E. 797, 50 L. R. A. (N. S.) 778. Also, see *Ray Consol. Copper Co. v. Amer. Eng. Co.*, 204 N. Y. S. 849.

Finally, defendant urges that the wife plaintiff was guilty of contributory negligence which would bar a recovery. This was a question for the jury which has found otherwise. The argument is predicated on the assumption that the wife was negligent merely because her fingers were caught in the roller. It is a matter of common knowledge that operators of electrically driven wringers frequently have their hands caught in the rollers. This well known fact was emphasized and brought home to the defendant when the safety device was made a conspicuous feature of the wringer. Negligence is the absence of due care under the circumstances. A person acting with average care and prudence might have his attention distracted for a moment or suddenly endeavor to remove clothing that was caught, causing the operator to make a sudden move such as any prudent person would make. We cannot say as a matter of law that one who has his fingers caught in a wringer is negligent. That question was for the jury.

Judgments affirmed.