Horvath, Appellant, *v.* Morrison et al.

Argued December 9, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Leighton R. Scott,* of *Hogan & Scott,* for appellant.

*David B. Skillman,* for appellee.

OPINION BY STADTFELD, J., January 30, 1941:

The plaintiff, Marian Horvath, instituted an action in trespass against Russell J. Morrison, trading as Morrison's Electric Shop, vendor, and General Electric Company, manufacturer of an electric washing machine and wringer, for damages arising from personal injuries which she sustained when her right hand was caught in the wringer.

The case was tried before BARTHOLD, J., and a jury. At the close of the plaintiff's case, a compulsory nonsuit was entered by the trial judge in favor of General Electric Company. The jury returned a verdict of $500 against the remaining defendant, Russell J. Morrison, trading as Morrison's Electric Shop.

The plaintiff, on or about the 4th day of February, 1936, purchased the General Electric washing machine and wringer from the defendant, Morrison's Electric

Shop. The wringer was equipped with a "wringer release" designed to start and stop the rolls. To start the wringer, the operator pulls the release in a forward position causing the rolls to rotate in such a manner as to permit the feeding of clothing into the wringer from the washer. To stop the rolls, the release is pushed into an upright position. To reverse the rotation of the rolls, the release is pushed all the way down in a direction opposite to the operator. The release thus serves both as a method of starting the wringer rolls in motion and as a safety device to stop the wringer rolls in the event that anything gets caught between the rolls. At the time of the purchase, Morrison's Electric Shop, through its agent, demonstrated to the plaintiff the method of operation of the washer and the release, and specifically pointed to the release as one of the finest features of the washing machine. The machine was delivered to the home of the plaintiff and the wringer release tested by Mr. Talbot, agent of defendant, but not while clothes were in the wringer. The third week it was used by plaintiff, a blanket caught and the release would not work. She notified, by telephone, the defendant, Morrison, who sent Talbot, defendant's salesman, and another man, who looked at the machine and took it with them to the Morrison Shop and then returned it to plaintiff, who used it for several weeks until something again went wrong with the release, and after a complaint made by the plaintiff, a mechanic from Morrison's Electric Shop came and upon being asked by plaintiff what was wrong with the machine, he said that the wringer rolls were too tight and that there was a defect in the manufacture of the wringer posts. He took the machine and returned it to plaintiff in about three weeks. She used the machine for several weeks without using the wringer release until one Monday, when it did not work. She thereupon notified the Morrison Electric Shop who again sent Mr. Talbot and a mechanic. Plaintiff then stored the machine and did

not attempt to use it until May 23, 1938, when the wringer release again did not work. She so notified the Morrison Electric Shop which sent its head mechanic to the home of plaintiff on May 25, 1938. The mechanic pulled the release back and forth and said, "It was all right." Whereupon, plaintiff said, "I will show you how difficult it is for a woman to release, even with clothing in", and at that time plaintiff's hand was caught in the wringer. She immediately tried to pull the wringer release, which failed to function and release her hand, and the mechanic tried it but it didn't release, so he pulled the electric plug out to stop the rolls, ran out of the room and returned with a wrench with which he pried open the rolls thereby releasing plaintiff's badly injured hand. The jury returned with a verdict for plaintiff in the amount of $500. Motion for judgment non obstante veredicto on a point reserved by defendant, Morrison Electric Shop, was filed, and on August 5, 1940, judgment non obstante veredicto for defendant, Morrison Electric Shop, was granted. Said order granting same was amended by the court on October 11, 1940. Exceptions were filed by plaintiff to said order and judgment and this appeal followed.

The basis assigned by the court below for the entry of judgment n. o. v. was the alleged contributory negligence of the plaintiff.

Plaintiff appellant relied in the court below, as she does in this court, on the case of *Ebbert et al. v. Philadelphia Electric Co.*, 126 Pa. Superior Ct. 351, 191 A. 384. The court below endeavored to distinguish that case from the instant case, by stating: "She (plaintiff in the Ebbert case) had no notice of any kind that the 'touch release' did not operate. In the case before us, the plaintiff was not engaged in doing a washing, but was in the act of demonstrating to the repairman the difficulty of operating the 'wringer release'. From her own experience in operating the release she had notice that the 'wringer release' did not operate properly."

In describing the manner in which the plaintiff received her injury, plaintiff on direct examination testified as follows: "A. He (referring to defendant's mechanic) said he would like to see the washer; and I took him in the kitchen, and he put the plug in the wall and started the motor, and he said he could not hear any motor knock. I said: 'It doesn't make noise until after two washings;' and he put his hand on the gyrator and said he did not see how it could cut the clothing; and he was pulling the release back and forth, *and said it was all right*. I said: 'I will show you how difficult it is for a woman to *release, even with clothing in;'* and *in that time my hand was caught in the wringer."* On cross-examination, the plaintiff testified as follows: "A. He said he was head mechanic for the Morrison Shop and he would like to look at my washer. I took him into the kitchen, and he put the plug in and started the motor; and he said he couldn't hear any motor knocks; and I said it didn't happen until after a few washings; and he put his hand on the gyrator and released the wringer back and forth, and said *it was releasable*. Then I told him I would show him how difficult it is for a woman to release; and I turned on the wringer and was going to turn it off, and in that time my hand was taken into the wringer. Q. How did your hand happen to be taken into the wringer? A. I went to pull down the safety release, to start the wringer, to start the wringer rolls moving, and my hand was taken in. *I must have had my hand near it."*

It is a fair inference from her statement "I will show you how difficult it is for a woman to release, *even with clothing in"* that at this time some clothing had been fed into the wringer when she undertook to operate it after the mechanic of defendant had operated the wringer in demonstrating it to her and said "it was releasable" and "that it was all right."

We quote from the opinion of the court below: "At the time of the purchase Morrison's Electric Shop,

through its agent, demonstated to plaintiff the method of operation of the washer and the 'wringer release' and specifically pointed to the 'wringer release' as one of the finest features of the washing machine."

The lower court stated: "From her own experience in operating the release, she had notice that the 'wringer release' did not operate properly." Whatever may have been its condition prior to the accident, it is uncontradicted that immediately before the accident, the mechanic had tested and demonstrated it to her and said "it was releasable" and "it was all right."

The purpose of the release, was to meet just such contingencies as plaintiff encountered, namely, that if, in the use or operation of the machine wherein the fingers necessarily came close to the wringer and should be caught, they were immediately releasable by the operation of the release. Her injuries were sustained through the failure of the wringer release to operate.

We think the language of Judge PARKER, lately of this court, in the Ebbert case, supra, is directly applicable. We quote therefrom as follows: "Finally, defendant urges that the wife plaintiff was guilty of contributory negligence which would bar a recovery. This was a question for the jury which has found otherwise. The argument is predicated on the assumption that the wife was negligent merely because her fingers were caught in the roller. It is a matter of common knowledge that operators of electrically driven wringers frequently have their hands caught in the rollers. This well known fact was emphasized and brought home to the defendant when the safety device was made a conspicuous feature of the wringer. Negligence is the absence of due care under the circumstances. A person acting with average care and prudence might have his attention distracted for a moment or suddenly endeavor to remove clothing that was caught, causing the operator to make a sudden move such as any prudent person would make. We cannot say as a matter of law that

one who has his fingers caught in a wringer is negligent. That question was for the jury."

A recovery was sustained in that case and the judgment was affirmed by the Supreme Court in an exhaustive opinion by Mr. Justice MAXEY, reported in 330 Pa. 257, 198 A. 323. We quote therefrom from pp. 269, 270, as follows: "In the instant case the defendant took upon itself for a consideration the duty of demonstrating and adequately testing an electric wringer, whose failure to function in an emergency, as the defendant had given plaintiff reason to believe it would, indicates that the test was negligently made and that this negligence was the proximate cause of the proven injuries. In *Bisson v. Kelly,* 314 Pa. 99, 110, 170 A. 139, we said: 'The duty defendant breached was a duty imposed by law, not a duty self-imposed by contract. It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen.' "[1]

In the instant case, the verdict of the jury was in favor of plaintiff. Every fact and reasonable inference therefrom must be taken as in favor of plaintiff.

The assignment of error is sustained, the judgment of the court below is reversed and it is now directed that judgment be entered on the verdict in favor of plaintiff.

[1] See a very comprehensive discussion on "Vendor's Tort Liability" by Professor Laurence H. Eldredge, in University of Pennsylvania Law Review, Vol. 89, No. 3, January 1941.