# Griffin et al. *v.* Metal Product Company, Appellant.

*Sales—Trade name—Custom—Warranty—Inspection—Damages —Expenses—Act of May 19, 1915, P. L. 543.*

1. A trade name within the provisions of the Sales Act of May 19, 1915, P. L. 543, is a name given by a manufacturer to the particular product made by him. The generic name of an article manufactured by a number of people is not a trade name within that act.

2. If one party is allowed to offer proof of an alleged custom the other must be permitted to produce evidence to the contrary.

3. Where goods are sold f. o. b. a distant point without inspection, and the purpose for which they were purchased was made known to the seller, there is an implied warranty of quality under the Sales Act, unless the other facts in the case show that no such warranty was intended.

4. In cases of breach of warranty of quality of an article purchased for a known purpose of manufacture, expenses incurred in good faith in endeavoring to use the article for that purpose, are recoverable under the Sales Act if not too remote.

Reargued March 3, 1919. Appeal, No. 125, Oct. T., 1918, by defendant, from judgment of C. P. Beaver Co., June T., 1917, No. 15, on verdict for plaintiffs in case of Joseph E. Griffin et al., trading as Reliance Steel & Tool Co., now for use of Reliance Steel & Tool Co., Incorporated, v. Metal Products Company. Before Brown, C. J., Stewart, Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Reversed.

Assumpsit for goods sold and delivered. Before Baldwin, P. J.

Verdict and judgment for plaintiff for $1,782.13. Defendant appealed.

*Errors assigned* were rulings on evidence, quoting the bill of exceptions, and various instructions.

*Wm. A. McConnell,* for appellant.—The court's interpretation of this act deprives the defendant of a substantial right which, it seems to us, he is entitled to, and he has suffered a loss for which he has no remedy against the plaintiffs. This ought not to be allowed, especially in view of the fact that defendants had this right before the passage of this act: Hunt v. Gilmore, 59 Pa. 450; Nixon v. McCrory, 101 Pa. 289.

The law fixes the rights and liabilities of the parties and there can be no custom contrary to the law: Coxe v. Heisley, 19 Pa. 243.

A custom to affect the rights of parties must be ancient, uniform and notorious: Coxe v. Heisley, 19 Pa. 243; Adams v. Pittsburgh Insurance Co., 95 Pa. 348, and the same case reported in 76 Pa. 411.

A "trade name" is a name used to indicate the personal origin or source of the article to which it is applied, and then to identify such article and distinguish it in the market from other articles of a similar nature: Laughman's App., 128 Pa. 1.

High-speed steel is no trade name but a general designation of steel which has certain qualities which we contend and showed the steel sold to the defendant did not have.

*Frank E. Reader,* with him *W. S. Moore,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, March 24, 1919:

Defendant, a manufacturer of Pittsburgh, Pa., purchased from plaintiffs, who were in business in New York City, certain high-speed steel, f. o. b. the shipping point in New York. Defendant alleges that when the steel arrived it appeared to be in good condition, fit for making tools therefrom, for which purpose plaintiffs knew it was purchased, but after expenses had been incurred in endeavoring to make the tools, it was found to be unfit therefor, or for any other manufacturing purpose, and only valuable as scrap steel. The verdict was for plain-

tiffs for the full amount of their claim, judgment was entered thereon, and defendant appeals.

At the trial no question was raised as to the quantity of steel shipped to and received by defendant, as to the prices to be paid for it, or as to the credits to be allowed; and it was admitted plaintiffs knew the purpose for which it was purchased. The dispute centered around three matters: Was the steel of a quality reasonably fit for the making of tools? Was there an express warranty it should be? and was there an implied warranty it should be reasonably fit for the purpose because of plaintiffs' knowledge of the purpose for which it was purchased? As to the first and second of those questions no difficulty arises, the evidence was ample to submit to the jury, and the charge of the court below in regard thereto is unobjectionable. The rulings on the third, however, constitute serious error.

As the steel was to be delivered f. o. b. the shipping point in New York the contract was a New York contract, to be interpreted according to the law of that state, which, on this matter, is the same as our own, owing to the adoption by each state of the uniform Sales Act. The paragraphs thereof that need be considered are the following, numbered according to the Pennsylvania Act of May 19, 1915, P. L. 543:

"Section 15......First. Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

"Fourth. In the case of a contract to sell, or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

"Section 69. First. Where there is a breach of warranty by the seller, the buyer may, at his election,—

"(a) Accept or keep the goods, and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price."

"Sixth. The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty.

"Seventh. In the case of a breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

Much of the difficulty in the case arose from the erroneous conclusion of the trial judge that "high-speed steel" is a trade name under section 15, clause fourth, above quoted. In his charge he said: "It seems clear to the court that high-speed steel is a trade name indicating a particular kind of steel"; but he submitted the question to the jury, telling them if they found it was a trade name there was no implied warranty and plaintiffs were entitled to their verdict. In his able argument in this court, plaintiffs' counsel admitted there was no evidence justifying the submission of that question. There was evidence as to what constituted high-speed steel, and that each manufacturer thereof had a separate and distinct trade name for the particular high-speed steel manufactured by him; but beyond this the evidence did not go.

Plaintiffs were permitted to produce evidence of an alleged general custom in the trade,—contradicting the provisions of the Sales Act above quoted,—to the effect that if a buyer discovers defects in high-speed steel, his only right is to return it and receive credit for the contract price. When, however, defendant asked a witness, who had many years' acquaintance with the business and its customs, whether or not he had ever heard of such a custom, the evidence was objected to and overruled. To each of these rulings defendant excepted, and each is as-

signed as error. Plaintiffs, recognizing the fact that one or the other must be erroneous, now claim the proof offered by them was rather of a practice in the business than of a custom or usage thereof. This, however, would not relieve the error, and moreover would transfer it only from the refusal to admit defendant's evidence to the admission of plaintiffs'. From the latter the jury might have concluded, and for all we know did conclude, that under the alleged custom defendant's only right was to return the steel, and, not having done so, could not recoup the loss by reason of its defects.

It was also error to refuse to permit defendant to show the expenses incurred in the endeavor to make tools from the steel, before it discovered the impossibility of so doing. The inquiry was shut off at the beginning, for the witness was not even allowed to state whether he knew what the expenses were. The objection to the evidence is founded on section 69, clauses sixth and seventh above quoted, which says a buyer is entitled to set off only "the loss directly and naturally resulting in the ordinary course of events," which, "in the absence of special circumstances showing proximate damage of a greater amount, is the difference" between the value of the steel as it was and as it would have been had it "answered to the warranty." It is difficult to understand what loss could more directly and naturally result, in the ordinary course of events, than the initial expenses incurred in using the steel, when the defects in it were not otherwise discoverable. What those expenses were, and whether or not any of them were too remote, is not disclosed, because no inquiry into the matter was permitted. When the evidence is in, or is specifically offered, the court can determine the question of remoteness, which, after all, is generally one of degree. That such expenses are allowable if not too remote, has often been decided both before and since the passage of the Sales Act: Williston on Sales, Sec. 614.

In the first argument in this court, plaintiffs' counsel claimed the judgment should not be reversed, notwithstanding the errors above set forth, because the evidence was insufficient to justify the jury in finding an implied warranty. The basis of this contention was that under section 15, clause first, above quoted, there would have to be express notice to the seller of an intention to rely on his skill and judgment before the implied warranty could arise. When, however, the case was heard on a reargument ordered upon this specific ground, he frankly admitted there was "evidence from which an implied warranty could be found under the provisions of the Sales Act." This was the opinion of the trial judge, and we think it is correct. Before the passage of the act, it had been repeatedly so held, so far as relates to the grower or manufacturer of the goods sold, and the only change made thereby was to extend the rule to every seller "whether he be the grower or manufacturer or not."

In Kellogg Bridge Company v. Hamilton, 110 U. S. 108, it is said: "When, therefore, the buyer has no opportunity to inspect the article, or when, from the situation, inspection is impracticable or useless, it is unreasonable to suppose that he bought on his own judgment, or that he did not rely on the judgment of the seller as to latent defects of which the latter, if he used due care, must have been informed during the process of manufacture. If the buyer relied, and under the circumstances had reason to rely, on the judgment of the seller, who was the manufacturer or maker of the article, the law implies a warranty that it is reasonably fit for the use for which it was designed, the seller at the time being informed of the purpose to devote it to that use."

In substance, we also so held in Erie City Iron Works v. Barber, 106 Pa. 125; and in American Home Savings Bank v. Guardian Trust Company, 210 Pa. 320.

The judgment of the court below is reversed, and a venire facias de novo awarded.