TEXAS MOTORCOACHES, Inc. (J. G. BRILL CO., Third-Party Plaintiff), v. A. C. F. MOTORS CO. (BUDD WHEEL CO., Third-Party Defendant).

Nos. 8892–8894.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 21, 1945.

Decided Feb. 13, 1946.

92

Thomas E. Comber, Jr., of Philadelphia, Pa. (Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., on the brief), for Budd Wheel Co.

Benjamin O. Frick, of Philadelphia, Pa., (Philip H. Strubing and Evans, Bayard & Frick, all of Philidelphia, Pa., on the brief), for A. C. F. Motors Co. and J. G. Brill Co.

Howard R. Detweiler, of Philadelphia, Pa. (Ambler & Ambler, of Philadelphia, Pa., on the brief), for Texas Motorcoaches, Inc.

Before BIGGS, McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

These actions to recover damages for breach of implied warranty arise out of the same set of circumstances. Their determination will dispose of the ultimate liability for personal injuries and property damage to third parties, as between a buyer, a seller, a manufacturer of a finished product and a maker of a component part assembled in that which was made and sold.

In August, 1940, the plaintiff, Texas Motorcoaches, Inc., (hereinafter referred to as "Texas") purchased in Philadelphia for use in its business as a common carrier in Texas, ten parlor-type motor coaches from A. C. F. Motors Company (hereinafter referred to as "A. C. F."), which was acting as sales agent for their manufacturer, J. G. Brill Company (hereinafter referred to as "Brill"). The brake drums assembled in these motor coaches were manufactured by Budd Wheel Company (hereinafter referred to as "Budd") and sold in Philadelphia to Brill.

On October 14, 1940, one of these motor coaches, while being operated on a public highway in the State of Texas, swerved off the road into a ditch, causing personal injuries to seventeen passengers as well as

certain property damage. Following this occurrence, claims were made against Texas for damages caused by negligent operation of the bus. Texas did not contest these claims but paid out $20,939.78 in their settlement. Texas also spent $399.16 in repairing the motor coach.

On November 6, 1942, more than two years later, Texas filed a complaint in the District Court for the Eastern District of Pennsylvania to recover these sums, asserting that A. C. F. and Brill were liable to it for breach of an implied warranty that the motor coach was fit for the use for which it was intended (carrying passengers for hire). Texas alleged that the motor coach was equipped with a defective brake drum which caused the bus to run off the road into the ditch, thereby harming persons and property in consequence of the breach of warranty.

A. C. F. denied liability and filed a cross-claim against Brill for whatever damage might be assessed against it, basing its claim on the breach of an identical implied warranty. Brill denied liability and filed a third party complaint against Budd for whatever damage might be assessed against it, resting its claim on a breach of implied warranty that the brake drum was properly manufactured and fit for use upon parlor coaches of this particular type. Budd denied any breach of warranty. Nowhere in the pleadings be it in the complaint filed by Texas, the answer and cross-claim filed by Brill, the answer and third party complaint filed by A. C. F., and the answer of the third party defendant, is there an averment of notice of breach of implied warranty.

After a trial before a jury, judgment in the District Court was entered for Texas and against A. C. F. in the sum of $26,013.-60 together with costs, for A. C. F. and against Brill in like sum; and, finally, for Brill against Budd in the same amount. A. C. F., Brill and Budd moved for judgment n.o.v. or in the alternative for a new trial. The court below denied all of these motions.

A. C. F. and Brill have appealed, seeking a reversal of the trial Judge's refusal to grant judgment n.o.v. Budd likewise has appealed seeking a similar reversal or, in the alternative, a new trial.

■ Possessing jurisdiction because of diversity of citizenship, the District Court was required to apply the rule of conflict of laws applicable in the State in which it sat (Pennsylvania): Klaxon Co. v. Stentor Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Existence of an implied warranty of quality was thus to be determined by the law of the place of contracting: Griffin v. Metal Product Co., 1919, 264 Pa. 254, 107 A. 713; cf. Chicago Pneumatic Tool Co. v. Ziegler, 3 Cir., 1945, 151 F.2d 784, 789; Restatement, Conflict of Laws, Section 332.

■ Whether there was a breach of warranty and, if so, what legal consequences resulted (including the measure of damages) depended upon the law of the place of performance of the contract: York Metal & Alloys Co. v. Cyclops Steel Co., 1924, 280 Pa. 585, 124 A. 752; Restatement, Conflict of Laws, Sections 358, 413; Goodrich on Conflict of Laws, Section 111.

Here, the evidence indicated that the sale of the brake drums and the motor coach took place in Pennsylvania. Title to the coach passed in Philadelphia. Completed performance by the defendant therefore occurred in Pennsylvania. If any warranty existed, its performance or breach occurred when and where the particular products *were sold*. What happened in Texas was merely a manifestation and result of the breach of warranty (if there was one). The public highways of Texas proved but the testing grounds of the fitness of the Pennsylvania products. Thus, Pennsylvania was both the place of contracting and the place of performance.

■ Accordingly, we look to Pennsylvania law for the applicable rules. Under section 15 of the Uniform Sales Act, part of the statutory law of Pennsylvania,[1] "Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." It was for the jury to determine whether the various buyers in this chain made known to their respective vendors the particular purpose for which the goods were required and whether the buyers relied on the skill or judgment of the sellers. Cf. Wolstenholme v. Jos. Randall & Bro., Inc., 1929, 295 Pa. 131, 137, 144 A. 909. There

---

[1] Act of May 19, 1915, P.L. 543, Sec. 15, 69 P.S.Pa. § 124.

being sufficient evidence, this phase of the case was properly put before the jury by the learned trial Judge. The verdict of the jury is therefore conclusive of the issue of the existence of an implied warranty under the proofs of this case.

So, too, whether there was a breach of warranty was for the jury's determination. Obviously, if the accident occurred only because of the improper operation of the bus by Texas, none of the defendants would be responsible. Or if, in fact, no defect existed in the brake drum, defendants would be absolved. The trail of liability could lead ultimately to Budd, the parts manufacturer, only if the accident on the Texas highway was caused by a defective brake drum improperly manufactured by Budd. If the defect resulted from negligent assembly of the brake drum on the coach, this trail could lead only to A. C. F. and Brill but not to Budd. On these issues there was sufficient evidence to go to the jury. The questions were all correctly submitted to the jury by the learned trial Judge. Breach of warranty by Budd, Brill and A. C. F. is therefore established by the verdict of the jury.

Our conclusions, thus far, disposed of two of the grounds advanced by A. C. F. and Brill to sustain their contention that the trial Judge ought to have granted judgment n.o.v. in their favor.

As a third reason why we should reverse the trial Judge's refusal to grant judgment n.o.v., A. C. F. and Brill contend that there was a failure to give requisite notice to them of the breach of warranty. Section 49 of the Uniform Sales Act[2] provides that, " * * * if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor." Consequently, failure of Texas to give timely notice as required by the Act would be fatal to its claim to damages for breach of warranty. Similarly, failure to give requisite notice to Budd would bar a recovery against it.

Such notice must be "clear and unambiguous" Wright v. General Carbonic Co., 1921, 271 Pa. 332, 339, 114 A. 517 and must "specify with some reasonable particularity" in what the breach consists: Aaron Bodek & Son v. Avrach, 1929, 297 Pa. 225, 230, 146 A. 546. And where, as here, the vendee intends to hold the vendor liable for special or "consequential" damages[3] flowing from the breach of warranty, he must so notify the vendor. "The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning": American Mfg. Co. v. U. S. Shipping Board Emergency Fleet Corp., 2 Cir., 1925, 7 F.2d 565, 566. Such advice is of practical importance in the case at bar where the damages were not liquidated and Texas subsequently voluntarily paid off the claims asserted against it: Cf. Tugboat Indian Co. v. A/S Ivarans Rederi, 1939, 334 Pa. 15, 21, 5 A.2d 153; Wise Shoes, Inc., v. Blatt, 1933, 107 Pa.Super. 473, 479, 164 A. 89.[4] Without advice that Texas was holding its vendors liable for breach of warranty and for the damages caused thereby, neither A. C. F. nor Brill would have had an opportunity to minimize the damages for which they might be responsible because of non-performance of their contracts: Cf. Columbia Axle Co. v. American Automobile Ins. Co., 6 Cir., 1933, 63 F.2d 206. Similarly, without advice that

2 Act of May 19, 1915, P.L. 543, Sec. 49, 69 P.S.Pa. § 259.

3 Paragraph "Sixth" of Sec. 69 of the Uniform Sales Act, May 19, 1915, P.L. 543, 69 P.S.Pa. § 314, provides: "The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty."

It has long been settled in Pennsylvania that there may be a recovery of consequential damages arising from personal injuries to third parties as a result of breach of warranty: See, for example, Dushane v. Benedict, 1886, 120 U.S. 630, 7 S.Ct. 696, 30 L.Ed. 810 where the Supreme Court carefully applied the Pennsylvania law governing damages for breach of warranty and Ebbert v. Phila. Electric Co., 1937, 126 Pa.Super. 351, 191 A. 384; affirmed in 1938, 330 Pa. 257, 198 A. 323. In this regard, the Pennsylvania rule is consistent with the weight of authority: 2 Williston on Sales, Sec. 614 (a); 1 Sedgwick on Damages (9th Ed.) Sec. 164(a). Perhaps the leading case sustaining recovery for sums of money paid to third persons injured as a result of breach of warranty is the English decision in Mowbray v. Merryweather [1895] 2 Q.B. 640 (Court of Appeals).

4 Neither of these cases, however, involved a breach of warranty.

Brill intended to hold its vendor liable for consequential damages arising from breach of warranty, Budd would have had no opportunity to minimize the damages for which it might be held responsible. Prior to final settlement with the injured third parties, any one of the defendants might have intervened. Whether they would have contested the claims to the bitter end or negotiated their settlement is not material. At the least they were entitled to the opportunity to consider the alternatives as a basis for possible action.

Normally, the question of notice is for the jury: Wright v. General Carbonic Co., 1921, 271 Pa. 332, 114 A. 517; Tinius Olsen Testing Machine Co. v. Wolf Co., 1929, 297 Pa. 153, 146 A. 541, 72 A.L.R. 718; C. D. Brown & Co., Inc. v. Standard Hide Co., 1930, 301 Pa. 543, 152 A. 557. However, where the evidence is undisputed and allows one inference only, lack of requisite notice will be determined as a matter of law: Bradford Gasoline Co. v. Hanley Co., 1934, 315 Pa. 441, 173 A. 401; Truscon Steel Co. v. Fuhrmann & Schmidt Brewing Co., 1937, 327 Pa. 10, 192 A. 679. Summary judgment on the pleadings will be entered if the facts averred disclose a failure to give requisite timely notice of the breach of warranty as required by section 49 of the Sales Act: Kull v. General Motors Truck Co., 1933, 311 Pa. 580, 166 A. 562.

Notwithstanding the failure to plead notice of breach of warranty, we have examined the record to ascertain if such notice was in fact given to the defendants. The only possible proof of notice of the claim of breach of warranty by Texas to A. C. F. or Brill lies in the testimony of Clyde A. Watkins, plaintiff's superintendent of equipment. He testified that after the bus was driven to the shop (shortly after the accident occurred [5]) he supervised an inspection of the rear wheels in the presence of "two representatives" of A. C. F., Mr. Norman Buchanan and a Mr. Chapman, a "research engineer." Mr. Watkins testified that Mr. Chapman examined some of the drums on all the busses. The witness was unable to state whether Mr. Chapman was employed by A. C. F. or Brill but on cross-examination testified as follows, "That at the time the accident happened Mr. Norman Buchanan, who is the A. C. F.

Motorscoach man was present and it was perhaps Norman who wired the company for additional drums. I am not saying that Mr. Chapman did." Counsel for A. C. F. and Brill then conducted the following cross-examination:

"Q. You do not know which one did? A. No, sir.

"Q. If either one did? A. Yes. I know one or the other did because we received additional drums.

"Q. That is possibly a conclusion. You did not see them send a telegram? A. No, I didn't."

The witness was then asked on direct examination, "Tell us what dealings you had with Chapman after he saw some of these drums." In response to which he testified, "Well, I believe it was his suggestion that we put the bands around the drums."

Later, Mr. Francis W. Kately, employed by Brill as a motor coach engineer, testified on cross-examination as follows, "Q. By the way, did you have anything to do with the replacement of the new drums on this fleet of busses? A. Yes." He then stated that the drums sent back as replacements were manufactured by the American Car and Foundry Company, Detroit. This colloquy followed: By the Court, "That is not this A. C. F. Company, the sales agency? The witness: No, it is not."

We have set forth excerpts from the testimony because the controlling question on the issue of judgment n.o.v. in favor of A. C. F. and Brill is notice as required by the Sales Act and the Pennsylvania decisions. The only proof that Texas gave notice of breach of warranty is the above evidence that "two representatives" of A. C. F. and/or Brill were present when the bus was inspected and that one was instrumental in obtaining replacements for the drums on the entire fleet of ten busses. No light is shed on the circumstances under which these replacements were made. There is no evidence from which the jury could have inferred that "clear and unambiguous" notice was given by Texas that it claimed a breach of warranty; or that Texas specified "with some reasonable particularity" in what the breach consisted. Much less was any inference possible that Texas gave notice that it intended to hold A. C. F. or Brill

_____

[5] The driver testified that the accident happened fourteen miles from Fort Worth and that forty-five minutes later he proceeded to drive the bus to the shop.

96

liable for consequential damages arising from an asserted breach of warranty. Under the Pennsylvania decisions, therefore, the case should not have gone ·to the jury ·or, if submitted, A. C. F. and. Brill were ·entitled to binding instructions.

Consequently, the judgment of Texas ·against A. C. F. cannot stand. And since A. C. F.'s claim against Brill was only for ·such damages as might be assessed against ·it, the judgment against Brill must also be reversed.

By the same reasoning, our conclusions ·thus far are dispositive of the appeal by .Budd. Since Brill made claim against Budd only for such damages as might be ·assessed against it in this action, the judgment in favor of Brill against Budd must be set aside.

It is unnecessary, therefore, to pass upon the reasons assigned by Budd for judgment n.o.v. or for a new trial in the alternative.

Judgments reversed and cases remanded for appropriate action in favor of the defendants and the third party defendant.