## Gustave Paul, Inc. v. Standard Slag Company

*Albert E. Acker* and *Cusick, Madden, Joyce Acker & McKay*, for plaintiff.

*James A. Stranahan, 3rd* and *Stranahan & Stranahan*, for defendant.

RODGERS, P. J., April 30, 1964.—Plaintiff, Gustave Paul, Inc., is a corporation which has been making cement blocks for approximately 40 years and for the last 10 years has been using slag purchased from defendant, Standard Slag Company. From July through December, 1959, some of the blocks made by plaintiff, using defendant's slag, disintegrated. Plaintiff sued, claiming that the distintegration was caused by an improper chemical reaction from defendant's slag and claimed damage for the replacement of structures damaged by the bad block, for blocks in the yard which had disintegrated before being sold, and for damages for detention.

The trial consumed 11 days and the jury heard 1,231 pages of testimony, including the opinions of several experts in the field of petrography and mineralogy from Cambridge, Manitoba and leading American universities on the causes of the failure of the block, based on their knowledge of the complexities of the chemistry of cement. The jury's verdict was for plaintiff in the amount of $66,981.21. Defendant filed a motion listing six reasons for a new trial, only one of which is being pressed here. The others must be considered abandoned.

Defendant contends that "the court erred in his charge in failing to limit the measure of damages only to the cost of material and labor used in the construction of the cement blocks."

The question as framed in the brief, however, asks, "Is the plaintiff entitled to prove the cost of manufacturing its blocks, as part of its damages, by taking a percentage of the sale price of the blocks?".

It was defendant's bad slag which caused plaintiff's damages. The jury's verdict, fully supported by the evidence, declared this and it is not now contested.

Defendant's brief concedes that the portion of the verdict rendered for the cost of making the repairs to the defective structures, excluding the cost of the actual

blocks used in the repairs, in the total amount of $29,741.97 is proper and that the attack on this verdict is limited to the award for the replacement blocks and for the bad blocks in the company inventory.

The essence of defendant's complaint is that plaintiff has not proven its damages with sufficient preciseness. In resolving this issue, the court adopts the summary of the law on damages as found in 11 P. L. Encyc. §2, commencing at page 362. The author there said:

". . . damages are generally involved in some uncertainty and contingency, and, as a result, the law, in allowing damages, requires only reasonable certainty as distinguished from mere conjecture. In this connection, damages are not conjectural or speculative merely because they are incapable of calculation with mathematical exactness, and it has been held that the law does not require that proof in support of claims for damages or in support of claims for compensation conform to a standard of mathematical exactness, and that evidence in support thereof is sufficient if it affords a reasonably fair basis of calculating the loss."

Of particular relevance to our problem is the statement:

"Courts will not be astute to permit persons who admit they have committed a wrong to escape the consequences of their acts because of a lack of precise means of proving the commission of the wrong, especially where the nature of the case does not permit exact proof, *and where there is a basis in the evidence for a reasonable computation of the damage suffered,* considering the nature of the transaction, *a verdict may be based thereon, even though there may be some uncertainty as to the amount of damage. As otherwise stated, compensation cannot be refused because proof of the exact amount of the loss or injury is not produced, for there is judicial recognition of the difficulty or even the impossibility of the production of such*

*proof, and all that the law requires in such cases is that the evidence shall, with a fair degree of probability, establish a basis for ascertainment of damages."* (Italics supplied.)

See also Griffin v. Metal Product Company, 264 Pa. 254, 258.

The jury was permitted to consider the testimony of plaintiff's accountant and others which led to the use of a percentage of the sales price of plaintiff's blocks in arriving at the cost of the blocks.

In this calculation, the court permitted plaintiff to arrive at this percentage by using a fraction, the denominator of which was the net sales price of all the blocks for the fiscal year of March 1, 1959, to February 29, 1960. This was arrived at by excluding from the cost-of-sales figure such items as advertising, sales cost, office salaries, insurance, licenses, payroll taxes, office expenses and business interest.

The numerator may properly be described as the direct manufacturing cost of all blocks produced during that fiscal year. As allowed by the court, it included the total of the cost of raw material, labor, and the difference between the beginning inventory and the ending inventory for the fiscal year of 1960, and included equipment repairs and maintenance, 60 percent of truck expenses, 60 percent of gas and oil, tools and supplies, hauling raw materials, $276.15 of $1,444.37 of the total telephone expenses, a portion of the total water bill, a portion of the total gas bill, all of the electric bill in that the meter of the plant was separate, propane gas, coal, one-half of accountant's fees, depreciation on the plant, workmen's compensation for plant employes, FICA taxes on plant employes only, hospitalization on plant employes only, and a portion of the salary of Alex Paul for the months of January and February of 1960, devoted by him to checking out causes of defective block. The court excluded officers'

salaries, insurance, licenses on trucks and equipment, tools and supplies, payroll taxes and office expenses, hospitalization attributable to officers and loans required for manufacturing. This percentage of the actual cost of manufacturing to the total sales as calculated by the certified public accountant was 88.75 percent. This percentage was then applied to the net sales price of each damaged block in order to arrive at the actual cost to plaintiff of these damaged blocks. Plaintiff's witness, a well-qualified certified public accountant, testified that this procedure was in accordance with good accounting practice. This testimony was not contradicted and the jury accepted its validity.

Defendant complains that this is an imperfect procedure and suggests that a proper way of calculating the cost of the blocks would be to determine the actual labor and materials used in each batch of blocks which actually went bad. The evidence disclosed that the Paul Company, although doing a substantial business, did not have the type of intricate cost accounting system which is used in some major manufacturing organizations. It would be unreasonable to expect that they could arrive at a precise cost figure under the circumstances. We do not believe that defendant can complain of this. Defendant had dealt with plaintiff for 10 years and knew not only the method of manufacturing, but the accounting and administrative methods used by plaintiff. When they wronged plaintiff by providing it with inferior materials, they must respond in the damages to the extent proved by reasonable certainty. They cannot demand mathematical exactness.

Defendant complains of the use of exhibits which contain summaries and calculations based on the evidence of the case. This jury was faced with the most intricate and, in many cases, esoteric testimony by experts in the field of cement chemistry. The entire testimony consumed 11 days of trial. We feel that it is

certainly proper for the court to permit the submission of summaries of the complex damage question.

The contentions concerning interest were not raised in defendant's motion for a new trial and will, therefore, not be considered.

*Order*

And now, April 30, 1964, defendant's motion for a new trial is denied.