Ferraro, Appellant, *v.* Ford Motor Company.

Argued September 27, 1966. Before BELL, C.J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN, and ROBERTS, JJ.

George M. Weis, with him Ralph T. Bell, and Weis & Weis, and Bell, Tamburo & White, for appellant.

David J. Armstrong, with him Raymond F. Sekula, and Dickie, McCamey & Chilcote, for appellee.

OPINION BY MR. JUSTICE EAGEN, November 15, 1966:

William G. Ferraro instituted this action of trespass to recover damages for loss resulting from a unique automobile accident. The named defendants were the Ford Motor Company (Ford) and the Toohey Motor Company (Toohey). Since Toohey, a corporation, had been dissolved, service was never effected on this defendant. Ford was properly served, and the action proceeded against it alone.

After trial, the jury awarded the plaintiff the sum of $107,851. Ford filed motions for a new trial and judgment notwithstanding the verdict. The lower court granted the latter motion and directed the entry of judgment for the defendant. After judgment was so entered, the plaintiff, Ferraro, appealed.

The record discloses the following: Ferraro, a contractor, purchased a new Ford dump truck, for use in the operation of his business, from Toohey, an authorized Ford dealer, on June 10, 1960. It was delivered on June 14, 1960. He used and operated the truck until August 22, 1960, or for a period in excess of two months (and a total of approximately 500 miles according to the odometer's registration), when the accident involved occurred. On that date, as Ferraro was engaged in operating the truck on a public highway and executing an extreme left-hand turn at an intersection, the left front wheel locked in the turned position. Ferraro attempted to apply the brake when his foot accidentally bumped the gas accelerator pedal, dislodging it from the ball socket underneath and causing the motor to race. The truck shot forward, left the highway, hit a house, and, as a result, Ferraro was seriously injured.

In his testimony Ferraro admitted that on two occasions prior to the day of the accident, he experienced similar instances of the front wheel locking as he executed a turn with the truck; the first such trouble occurring after the truck had been operated over one hundred miles. An examination disclosed that the tread on the inside perimeter of the tire wedged against a bolt on the side of the frame of the truck when the wheel was turned. He said the locking would be released by putting the truck in reverse. He also admitted experiencing trouble with the accelerator pedal dislodging before the day of the accident. This could be corrected temporarily by manually readjusting the ball under the pedal.

As a result of these known malfunctions, Ferraro brought the truck to the Toohey garage on at least three separate occasions before the day of the accident and complained about its condition. The first such instance was on the day he initially experienced the

locking of the wheels. On each occasion he was re-assured by employes of Toohey and told that the malfunctions were not serious, dangerous or sufficient to worry about; that the worst he could do would be to rub a little rubber off the tire and once it rubs off, "You're all right"; that Toohey didn't want him bringing the truck to the garage every week and to wait until he had more mileage on the truck and then bring it back for a thorough check and repairs. On these occasions Toohey did nothing to correct the locking problem, but an employee did show Ferraro how to install the displacement-prone ball underneath the gas pedal.

The lower court concluded that Ferraro was grossly negligent in continuing to operate the truck for a period of about six weeks after knowing of the existence of the malfunctions and the fact that they were not permanently remedied.

In *Webb v. Zern,* 422 Pa. 424, 220 A. 2d 853 (1966), this Court recently adopted Restatement 2d, Torts §402A (1965), as the law of this Commonwealth in tort actions involving the liabilty of those who sell products in a defective condition. The question was not reached or ruled upon therein, as to whether or not contributory negligence or assumption of risk by the buyer would constitute a defense in such actions. After studied consideration, it appears to us that if the buyer knows of the defect and *voluntarily* and *unreasonably* proceeds to use the product or encounter a known danger, this should preclude recovery and constitute a complete defense to the action even in cases of strict liability. Cf., *Santor v. A. & M. Karagheusian, Inc.,* 44 N.J. 52, 207 A. 2d 305 (1965); Restatement 2d, Torts, §402A, comment n (1965); Prosser, Torts, §95 at 656-57 (3d ed. 1964); 1 Frumer & Friedman, Products Liability §16A (3)(a) (1964); Assumption of Products Risks, 19 Sw. L.J. 61 (1965);

and, Manufacturers' Liability to Remote Purchasers, 114 U. Pa. L. Rev. 539 (1966). We, therefore, adopt this as the law of Pennsylvania as a supplement to our ruling in *Webb v. Zern, supra.*

Therefore, the crucial issue in this case in determining if Ferraro's own actions preclude recovery is, whether or not, in view of his knowledge, he continued to use the truck and unreasonably encountered a known danger. Our conclusion is that this cannot be said as a matter of law, under the circumstances established by the record.

We must bear in mind that the evidence must be read in the light most favorable to Ferraro, and he is entitled to all reasonable inferences arising therefrom: *Smith v. United News Co.,* 413 Pa. 243, 196 A. 2d 302 (1964), and *Skoda v. West Penn Power Co.,* 411 Pa. 323, 191 A. 2d 822 (1963).

In the present case the essential facts are not disputed; however, crucial inferences proceeding from these facts are rationally susceptible to opposing interpretations. We see no merit in the contention that despite Ferraro's prior knowledge of the existence of the two malfunctions, it was reasonable for him to assume that both would not occur simultaneously. We agree with the court below that such an assumption was untenable, and no reasonable man could assume that they were mutually exclusive. However, we do believe, that whether or not it was reasonable for Ferraro to rely on the assurances of Toohey's specialized employees in assessing the seriousness and dangers of the defects was for the jury to resolve. In other words, we do not believe that it should be declared as a matter of law, that Ferraro acted unreasonably in relying upon the assurances he received, under all of the circumstances present.

In this connection comment a to §496E of the Restatement 2d, Torts (1965), is pertinent and point-

edly sums up the opposing positions on the question under discussion: ". . . The plaintiff's mere protest against the risk and demand for its removal or for protection against it will not necessarily and conclusively prevent his subsequent acceptance of the risk, if he then proceeds voluntarily into a situation which exposes him to it. Such conduct normally indicates that he does not stand on his objection, and has in fact consented, although reluctantly, to accept the danger and look for himself. Such a protest or objection is evidence indicating unwillingness to assume the risk, but the action may outweigh the words."

Comment a, however, immediately goes on to say: "Where, however, the plaintiff surrenders his better judgment upon an assurance of safety or a promise of protection against the risk, he does not assume it unless the known danger is so extreme that there can be no reasonable reliance upon such an assurance, or unless so much time has elapsed without action that he can no longer reasonably rely on it."

It is our conclusion that the matrix of logic does not clearly compel the acceptance of only one of these opposing positions. Rather do we believe, that, under the circumstances, reasonable men could honestly differ as to what impact, if any, the dealer's assurance would or should have had on the mind of a reasonably prudent automobile driver. Hence a jury question was presented. We will, therefore, reverse the entry of judgment n.o.v.

While the lower court did not dispose of the new trial motion, since it granted judgment n.o.v., it did strongly manifest its thinking in this regard. It said in part: "The verdict for Ferraro against the Ford Motor Company in the amount of $107,851 was startlingly excessive. It shocked the conscience of the court. It would be an injustice to allow the verdict to stand. The court would have felt impelled to grant

the motion for a new trial because of the excessiveness of the verdict and other grounds. It cannot be rectified by a remittitur." We do not regard this view of the lower court as either arbitrary or a clear abuse of discretion.

Judgment reversed and new trial ordered.