407 F.2d 87
 Frank G. GRECO
v.
BUCCICONI ENGINEERING CO., Inc., a Corporation, Appellant,
v.
WEAN ENGINEERING COMPANY, Inc., and Jones & Laughlin Steel Corporation.
Frank G. GRECO
v.
WEAN ENGINEERING CO., Inc., a Corporation, Appellant,
v.
BUCCICONI ENGINEERING CO., Inc. and Jones & Laughlin Steel Corporation.
Frank G. GRECO
v.
WEAN ENGINEERING CO., Inc., a Corporation v. BUCCICONI
ENGINEERING CO., Inc. and Jones & Laughlin Steel Corp.
Bucciconi Engineering Co., Inc., Appellant.
 Nos. 17161-17163.
 United States Court of Appeals Third Circuit.
 Argued Oct. 11, 1968.
Decided Jan. 30, 1969.
 
 George M. Weis, Weis & Weis, Pittsburgh, Pa., for appellant Bucciconi Engineering Co.
 Edmund S. Ruffin, III, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellant Wean Engineering Co.
 Donald E. Ziegler, Pittsburgh, Pa., for appellee.
 Before McLAUGHLIN, STALEY and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 STALEY, Circuit Judge.
 
 
 1
 Plaintiff-appellee, Frank G. Greco, an employee of the Jones & Laughlin Steel Corporation (hereinafter 'J. & L.') suffered serious personal injuries when a magnetic sheet piler malfunctioned at the J. & L. Pittsburgh mill. He brought this diversity action for compensatory damages against the Bucciconi Engineering Company (hereinafter 'Bucciconi'), the manufacturer of the piler, and Wean Engineering Company (hereinafter 'Wean'), the ultimate seller. J. & L. was joined as a third-party defendant in the district court.
 
 
 2
 Applying Pennsylvania law, the district court dismissed appellee's allegations of negligence against Bucciconi and Wean and charged the jury on the basis of strict liability in tort (Restatement (Second) of Torts 402A (1965).[1] The jury returned verdicts for appellee against Wean and Bucciconi, and in its answer to a special interrogatory, the jury found that J. & L. was negligent and that this negligence was a proximate cause of appellee's injury.
 
 
 3
 Following the verdicts, Bucciconi and Wean each filed post trial motions, and with the exception of one point not material here, the district court denied these motions and entered judgments in favor of appellee against Wean and Bucciconi. A judgment of indemnity was also entered in favor of Wean against Bucciconi. From the entry of these judgments Wean and Bucciconi now appeal.[2]
 
 
 4
 The piler in question was delivered to J. & L. in three sections and assembled by J. & L. employees. Its function in J. & L.'s new sheet coating line was to collect and pile sheet metal in preparation for shipment to J. & L.'s customers. Sheets of steel came into the piler by means of an overhead magnetic conveyor. Magnets in the conveyor would deactivate when the sheets were directly over the piling area and the sheets would drop between parallel side guides and end stops onto a lift or hoist which was lowered by an operator after a certain number of sheets had settled on it. When this hoist was being lowered to carry the piled sheets to a conveyor system, two strips of metal called 'fingers' would protrude from the side guides of the piler to catch and hold the newly arriving steel sheets. When the hoist returned, the fingers would retract into the side guides of the piler, and those sheets that had been collected by the fingers would settle onto the hoist.
 
 
 5
 Soon after the piler went into operation its fingers began to retract erratically without activation from the operator at the control panel. Four days prior to appellee's injury, J. & L. inserted two 'pins' in the fingers in an attempt to prevent this retraction and the resultant spilling of the steel sheets to the floor. Neither appellee nor the other employees were instructed in the use of these pins. It was appellee's belief, based upon his limited experience with the pins during the short time they were in use, that the fingers could not malfunction as long as one of the pins remained inserted; he was not told otherwise. On the day of the accident, with one pin in and the other out, appellee reached beneath the sheet-catching fingers to straighten and center wrapping paper on the hoist as it rose to collect a new pile of steel; without any activation from the control panel, one of the fingers retracted causing the sheets above to tumble down atop appellee's outstretched hand.
 
 
 6
 Section 402A of the Restatement (Second) of Torts, provides:
 
 
 7
 '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 
 
 8
 '(a) the seller is engaged in the business of selling such a product, and
 
 
 9
 '(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 
 
 10
 '(2) The rule * * * applies although
 
 
 11
 '(a) the seller has exercised all possible care in the preparation and sale of his product, and
 
 
 12
 '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.'
 
 
 13
 Since appellee did not introduce substantial evidence relevant to appellants' negligence in the manufacture or design of the piler, we must first determine whether it is the law of Pennsylvania, as appellee asserts, that a plaintiff in a strict liability case can establish a 'defective condition' within the meaning of Section 402A by proving that the product functioned improperly in the absence of abnormal use and reasonable secondary causes.[3] That this is the law appears evident from the Pennsylvania Supreme Court's decision in Bialek v. Pittsburgh Brewing Co., 430 Pa. 176, 242 A.2d 231 (1968). There, the plaintiff brought suit under Section 402A for personal injuries suffered when a bottle allegedly exploded in his hand. He denied causing the explosion by striking the bottle in any way, and he attempted to present expert testimony concerning the cause of the emplosion. The court held that such testimony was proper, albeit unnecessary, since 'both plaintiff and Leon Dorsey testified that the bottle exploded spontaneously. Their testimony alone, given the fact that an explosion was not a physical impossibility, was sufficient to make the issue a jury question. * * *'[4]430 Pa. at 184, 242 A.2d at 235. In granting plaintiff a new trial in Bialek, the court stated:
 
 
 14
 '* * * the trial court should clearly instruct (the jury) * * * that plaintiff is not required to prove that the defendants were negligent, that the defendants can be liable even if they exercised all possible care and that no consideration should be given to negligence.' 430 Pa. at 185, 242 A.2d at 235.
 
 
 15
 Bucciconi vigorously contends that appellee failed to sustain his burden of showing the existence of a defect at the time of sale.[5] The test we must apply is whether reasonable and well balanced minds would be satisfied from the evidence adduced that the defective condition existed when the machine was delivered. Forry v. Gulf Oil Corp., 428 Pa. 334, 350, 237 A.2d 593, 597 (1968); Knapp v. Willys-Ardmore, Inc., 174 Pa. Super. 90, 100 A.2d 105 (1953); Ebbert v. Philadelphia Electric Co., 126 Pa.Super. 351, 191 A. 384 (1937), aff'd, 330 Pa. 257, 198 A. 323 (1938). The record discloses that four J. s& L. employees testified that they had personally observed the piler malfunction. One of the employees, Victor H. Santoro, who was assigned to operate the piler a week after it was put into operation, testified that there were a 'lot of bugs in the machine then, and we were running slow.' One of these 'bugs' was a malfunction of the fingers. Santoro stated that after the line had started into operation the fingers began releasing on their own without any activation from the control panel; and this happened often. Appellee was injured approximately six months after the piler began operating. Santoro was operating the piler on the day of the mishap and he denied causing the sheets to fall by activating the fingers. He stated that he looked at the control panel after the sheets had fallen on appellee's hand, and the switches indicated that the fingers were extended rather than retracted.
 
 
 16
 Another employee, Eugene W. Zortea, who was also present when appellee was injured, stated that a malfunction in the piler caused the sheets to fall on Greco's hand. He further testified that for approximately six months he had been telling the various foremen on that shift that someone was going to get hurt because of the sheets dropping from the piler. This testimony (as well as that of the other employees), if believed, would certainly permit the inference that the piler malfunctioned from the beginning, since the piler was only in operation for about six months prior to the accident. On the basis of the uncontradicted testimony of the J. & L. employees and in light of the Pennsylvania Supreme Court's holding in Bialek,supra, we think there was indeed sufficient evidence to satisfy reasonable and well balanced minds that a defect existed at the time of sale. We also think that there was ample evidence for the jury to find that the piler was not abnormally used,[6] and that appellee negated all reasonable causes for the malfunction, except manufacturing defect.[7]
 
 
 17
 It is our opinion, too, that the purported 'changes' in the piler by J. & L. employees were not intervening superseding causes relieving appellants of liability. Restatement (Second) of Torts 402A, comment q at 358 (1965), suggests 'that where there is no change in the component part itself, but it is merely incorporated into something larger, the strict liability will be found to carry through to the ultimate user or consumer.' In the instant case, the piler was shipped to J. & L. in three sections and assembled by J. & L. employees. There is absolutely no evidence that the piler was changed in any way by J. & L. upon assemblage. Concededly, the piler was changed to a small extent when J. & L. inserted pins in the fingers, but this alteration came about because of a defect attributable to appellants. And it was this very defect, namely, the releasing of the fingers without activation, not the insertion of the pins, that caused the amputation of appellee's fingers.
 
 
 18
 Following oral argument of this appeal, the Pennsylvania Supreme Court decided the case of Bartkewith v. Billinger, 247 A.2d 603, March Term (1968). Plaintiff in that case, an experienced glass factory worker, injured his hand when he reached into a glass stacking machine to remove a piece of glass. Proceeding against the manufacturer under Section 402A, plaintiff, relying upon testimony of safety experts, argued that the machine was defectively designed because, among other things, it did not contain guards to prevent workers from putting their hands into the machine. The jury returned a verdict for plaintiff, but the Pennsylvania Supreme Court reversed, holding that plaintiff had voluntarily assumed the risk as a matter of law.[8] The court refused to impose an obligation upon the manufacturer to design its machine to keep workers' hands out, and stated that the manufacturer was entitled to rely upon the belief that its machine would be used in the usual manner.
 
 
 19
 Appellee in the instant action also presented expert testimony (over timely objection) that the machine was defectively designed, and we can reasonably assume that appellants would argue that this appeal is controlled by the Bartkewich decision. We, however, think the two cases distinguishable. In the first place, plaintiff in Bartkewich was not injured because of a misoperation of the machine, such as here. Secondly, the court in Bartkewich relieved the manufacturer of liability because the plaintiff assumed an abnormal, unanticipated work position when he reached into the machine with knowledge that the danger existed at that time. Here, however, the evidence permits the inference that the manufacturer knew that employees would have to reach under the fingers of the piler to properly perform their job. Indeed, an engineer and officer of Bucciconi, V. S. Bucciconi, as much as admitted this when asked to give his opinion about the efficacy of placing a guard in the area that appellee worked. He answered that a guard would not be of much value because if an employee had to straighten paper on the skids he would 'have to reach through or under or remove the guard to do that.' Furthermore, in its erection and instruction manual for the piler, Bucciconi states that 'skids must be placed properly on the machine,' and after the skids are loaded with steel and lowered, an employee 'must then place on a new set of skids-- making sure they are well centered and that they will move up between the fingers.' Testimony of J. & L. employees established that it was impossible to center the skids automatically; the centering had to be done by an employee who went beneath the fingers and then signaled the operator that the skids were properly positioned. Uncontradicted testimony also established that this was the normal practice of centering the skids at the J. & L. mill and that the company's foremen expected the employees to go beneath the fingers. It is true, of course, that appellee had been present on previous occasions when the machine malfunctioned; however, he said that he had never seen the sheets spill with one pin in and the other out. Inasmuch as appellee had never been instructed in the use of the pins, we are unable to say on the facts before us that he assumed the risk as a matter of law. Compare Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A.2d 746 (1966), with Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409 (C.A.3, 1967). We think it was the province of the jury to weigh appellee's credibility and to decide whether it was reasonable for him to assume that the sheets would not fall with one pin inserted. These questions of fact were resolved by the jury in favor of appellee, and we will abide by the verdict.
 
 
 20
 As for the expert testimony concerning the need for a rear guard on the piler, we note that the district court in its charge to the jury did not once refer to the safety expert's opinion, nor did it instruct the jury to consider whether the absence of a rear guard constituted a defective condition. Rather, the court summarized in a comprehensive and detailed manner the various contentions of the parties regarding the malfunctioning of the fingers, and then instructed the jury to determine from the evidence whether the machine was in a defective condition when sold. The jury found that it was, and we think, as did the Pennsylvania Supreme Court in Bialek, that the expert testimony was superfluous. Since there is ample evidence in the record to support a finding that the errant fingers constituted the defective condition, the judgments in favor of appellee can and will be sustained solely on that basis. See Jaffke v. Dunham, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957).
 
 
 21
 Lastly, Bucciconi contends that the district court erred in granting a judgment of indemnity against it and in favor of Wean. With this we cannot agree. The evidence reveals that Wean was the 'supplier' of the machinery for J. & L.'s sheet coating line; acting in that capacity, Wean paid Bucciconi for the piler and subsequently passed title to J. & L. in consideration for the purchase price. Wean, however, never took physical possession of the piler. Bucciconi shipped it directly to J. & L.'s mill where it was assembled by J. & L. employees. Because Wean never handled the piler, the jury's verdict indicating the machine was defective when sold necessarily related to the first sale from Bucciconi to Wean, as well as the subsequent sale. And since the piler was obviously unfit for the purpose for which it was sold, the district court correctly held that Wean should be indemnified for breach of Bucciconi's warranty of merchantability. Cf. Tromza v. Tecumseh Products Co., 378 F.2d 601 (C.A.3, 1967). See Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 848 (1966); Wade, Strict Liability of Manufacturers, 19 Sw.L.J. 5, 24 (1965).
 
 
 22
 We have carefully considered the remaining contentions raised by the respective parties, and we have concluded that the district court did not err in its disposition of these actions. Accordingly, the judgments of the district court will be affirmed.
 
 
 
 [1]
 Pennsylvania adopted this section of the Restatement in Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966)
 
 
 [2]
 In its appeal from the judgment entered against it in favor of appellee (No. 17161), Bucciconi requests judgment notwithstanding the verdict. In its appeal from the judgment of indemnification entered against it in favor of Wean (No. 17163), Bucciconi requests judgment of indemnity against Wean, or alternatively, the granting of a new trial. In No. 17162, Wean has joined in Bucciconi's appeal against appellee by filing its own appeal from the judgment entered against it
 
 
 [3]
 A standard similar to that urged by appellee was applied in Franks v. National Dairy Products Corp., 282 F.Supp. 528 (W.D.Tex.1968), wherein the court stated:
 '* * * It is essential to the proving of a defect (when circumstantial evidence is the only proof) * * * that the plaintiff negative improper handling or use and that plaintiff negative causes of the accident other than the product's own defective condition.' 282 F.Supp. at 531.
 For other sources commenting on the characteristics of a defective product and the burden of proof in a strict liability case, see generally 2 Frumer & Friedman, Products Liability 16A(4)(e) (1968); Dickerson, Products Liability: How Good Does a Product Have to be?, 42 Ind.L.J. 301 (1967); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791 (1966); Traynor, The Ways and Means of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363 (1965); Wade, Strict Liability of Manufacturers, 19 Sw.L.J. 5 (1965).
 
 
 [4]
 For examples of other instances where it has been held that evidence of a malfunction or abnormal performance was sufficient to present a jury question, see Cordle v. Renault, Inc., 361 F.2d 332 (C.A.6, 1966); Delaney v. Towmotor Corp., 339 F.2d 4 (C.A.2, 1964); Putnam v. Erie City Mfg. Co., 338 F.2d 911 (C.A.5, 1964); Ford Motor Co. v. Zahn, 265 F.2d 729 (C.A.8, 1959); Cintrone v. Hertz Truck Leasing and Rental Service, 45 N.J. 434, 212 A.2d 769 (1965); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960)
 
 
 [5]
 Appellants do not contend that the piler was not 'unreasonably dangerous to the user' if it was sold in a defective condition. The Restatement's use of 'unreasonably dangerous' has been interpreted by one commentator to mean, 'assuming that the defendant had knowledge of the condition of the product, would be then have been acting unreasonably in placing it on the market?' Wade, Strict Liability of Manufacturers, 19 Sw.L.J. at 15 (1965). On the facts of this case there can be no doubt that if the machine was sold in a defective condition it was unreasonably dangerous to the user
 
 
 [6]
 Evidence that the piler was not abnormally used will be set out in the text, infra, when consideration is given to whether appellee assumed the risk as a matter of law
 
 
 [7]
 As stated by Mr. Justice (later Chief Justice) Stern in Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 25, 68 A.2d 517, 528-529 (1949):
 '* * * Proofs to a degree of absolute certainty are rarely attainable; it is sufficient if they are such as to satisfy a reasonable mind; the law does not require the elimination of every possible cause of the accident other than that on which the plaintiff relies, but only such other causes, if any, as fairly arise from the evidence. * * *'
 See also Cuthbert v. City of Philadelphia, 417 Pa. 610, 209 A.2d 261 (1965); Smith v. Bell Telephone Co. of Pennsylvania, 397 Pa. 134, 153 A.2d 477 (1959).
 It is Bucciconi's contention that appellee's evidence points with equal or greater force toward the conclusion that an electrical problem in the control panel, which it neither manufactured nor supplied, caused the fingers to misoperate. Reference to the record discloses that one Giuliani, a J. & L. engineer, testified that before they resorted to inserting the pins, J. & L. personnel examined the equipment over which they had control; they were unable to duplicate the malfunction or discover its cause. Santoro, the piler operator, testified that he never had a problem with the control panel while operating the machine. He further stated that each time the fingers misoperated a J. & L. electrician came around to examine the control panel; there was no evidence indicating that anything in the control panel was causing the erratic retraction of the fingers. Viewing the evidence in a light most favorable to appellee, and mindful that Bucciconi presented no evidence to support its position, we think the jury could properly have inferred that the malfunction was caused by a manufacturing defect rather than an electrical one.
 
 
 [8]
 The court granted judgment notwithstanding the verdict for defendant. Assumption of risk by the plaintiff is a complete bar to recovery in a suit brought pursuant to Section 402A. Restatement (Second) of Torts 402A, comment n at 356 (1965). See Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A.2d 746 (1966)