M. M. PHILLIPS et al.

v.

Robert F. ALLEN et al.

v.

M. M. PHILLIPS.

Civ. A. No. 75–60 Erie.

United States District Court,
W. D. Pennsylvania.

Feb. 25, 1977.

---

**13.** Grantham affidavit, *supra*, Ex. Q.

James Jenks, Ted Padden, Erie, Pa., for plaintiffs.

William Jorden, James Jenks, Erie, Pa., for defendants.

## OPINION

KNOX, District Judge.

The within case arose out of an unfortunate incident which occurred at Commodore Downs Racetrack in Fairview Township, Erie County on May 25, 1973, when one horse was killed and three others injured by an electrical shock while attached to a horsewalker manufactured and allegedly installed by the defendant Robert F. Allen.

At the trial it developed that the plaintiffs had placed their horses in charge of Ralph Phillips, husband of M. M. Phillips for purposes of training and running at the track where they were kept in a stable. The original complaint charged that Robert F. Allen and John R. Allen were engaged as partners in the business of "Satellite Walkers". However, the jury verdict specifically found that John R. Allen was not a partner of his father Robert F. Allen so the only question that remains is the individual liability of Robert F. Allen. Also at the trial M. M. Phillips wife of Ralph Phillips, as third party defendant was not shown to be involved in any way in the damages to the interests of the others in the horses and therefore a verdict was directed in her favor as third party defendant.

A horse walker is a device similar to a carousel which is turned by an electric motor. The top is like an umbrella on a pole and the horses are attached to the arms of the umbrella which then is rotated in a circle at varying speeds to exercise the horses thus saving time of an individual trainer.

The walker was manufactured by defendant Robert F. Allen and delivered to Phillips at the track on May 18, 1973. At that time, it was installed with a conduit to run to the power source inside the barn at the track. Phillips then asked to see the device operate. He had purchased it under hire-purchase agreement whereby he would pay for it in installments during the term of the lease. Allen thereupon installed a temporary ordinary extension cord to connect to the electrical source inside the barn and demonstrated to Phillips that the device would rotate. He cautioned him, however, at that time according to testimony believed by the jury that a permanent electrical connection should be provided that he himself was not an authorized electrician and that the electrical connection should be made by a three-phase wire so as to avoid possibility of shorts and the electrocution which did occur.

On May 25, 1973, the plaintiff's agent Ralph Phillips attached four horses to the walker. After the device had been in operation a short time one of the horses was killed by an electric shock and the other three allegedly suffered severe injuries. Particularly, the horse named Sweet Emma was killed, and Canadian Air, Anita Boro

and Miss Sara James suffered electrical injuries.

At the trial of the case, the jury returned a special verdict. With respect to interrogatory No. 1 they found that the Allens were not engaged in business as a partnership. With respect to Interrogatory No. 2 they found that defendant Robert Allen was not guilty of negligence. With respect to Interrogatory No. 3 they found there was no breach of warranty. On Interrogatory No. 4, they found that any negligence or breach of warranty by the defendant Robert Allen was not the proximate cause of plaintiff's damage. On Interrogatory No. 5 they found that Ralph D. Phillips was guilty of assumption of the risk so as to bar recovery by the plaintiffs. The result of course was that no damages were awarded to plaintiff and the court thereafter on September 9, 1976 entered a judgment order directing judgment be entered in favor of the defendants. At the argument on plaintiffs' motion for new trial plaintiffs abandoned their argument that a partnership existed between the Allens father and son. However, plaintiffs did press their motion with respect to the failure of the jury to find negligence, to find breach of warranty and also the jury's finding that plaintiffs were barred by assumption of the risk.

With respect to negligence, the court fully instructed the jury with respect to § 388 of the Restatement of Torts which reads as follows:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

The court further told the jury that the fact that the walker was on lease at the time of the injury and title had not passed to the plaintiffs made no difference since under § 407 of Restatement of Torts 2d, a lessor leasing a chattel dangerous for the purpose for which it is intended is subject to the same liability as a supplier.

■ There was evidence in the case which the jury could have found that the temporary extension cord hooked up made the chattel dangerous for the use for which it was intended. There was, however, also ample evidence from which the jury could have found that the defendant Robert Allen warned the plaintiff's agent Ralph Phillips not to use the walker for exercising horses in it until a proper three-phase electrical connection had been made. It was a violation of these warnings given by Allen which caused the demise of one horse and injury to the others. This therefore brings the case within subsections (b) and (c) of 388 inasmuch as the defendant had no reason to believe that Phillips would not realize its dangerous condition and also that Allen had exercised reasonable care to inform Phillips of the dangerous condition of the chattel. The jury's finding of no negligence was entirely proper.

The plaintiffs have proceeded upon two theories for recovery. First they claimed for negligence under Restatement of Torts 2d 388 previously discussed (it will be noted that plaintiff did not make any claim under section 402(a) of the Restatement of Torts). Secondly, there was a claim for breach of warranty and the court instructed the jury on three types of warranties and informed them that there was no evidence of any express warranty in the case but that they might find breach of implied warranty of merchantability or the implied warranty of fitness for a particular purpose. The jury answered that they found no breach of warranty.

We agree with plaintiff that the weight of the evidence is that there were breaches of the implied warranties of merchantability and fitness in that the horse walker as installed with the particular extension cord which was used was unsafe for its intended purpose.

■ This, however, is not the end of the matter. The jury further found that if there was any breach of warranty it was not a proximate cause of plaintiff's damages. The jury verdict in this respect must be sustained. No expert testimony was offered by plaintiff or by anyone else as to exactly what sort of malfunction caused the electrocution of these horses, whether it was the result of the light extension cord instead of a heavy three pronged cord which caused the machine to be electrically charged so as to kill and injure them or whether it was an exposure of a bare wire from the conduit in which the electrical connection was laid to hook up with the power source.

Defendant Allen admitted that a three pronged cord was necessary to furnish proper grounding for the electrical system and that with a two pronged cord it was possible for electricity to go through to the arms of the walker. It was also testified that the conduit in which the wire was laid was installed by the defendant. Ralph Phillips denied that Allen had told him that the two pronged cord was dangerous but this of course raised a question for the jury to decide. There was also evidence that a wire was exposed on the dirt surface and that people walking on the ground in the vicinity were given electric shocks immediately after the death and injuries to the horses. In other words, it is not clear as to whether the two pronged plug made the installation unsafe or whether it was caused by a wire becoming exposed resulting in a dangerous condition in the vicinity when the ground was wet. In the absence of expert testimony, it would appear that a jury's verdict finding there was proximate cause would be based upon pure speculation and the jury declined to engage in any such speculation.

Further than this with respect to the asserted breach of warranty the jury determined in their answer to question No. 5 that the plaintiffs were guilty of assumption of the risk so as to bar their recovery. The jury was thoroughly instructed on assumption of the risk and found that the plaintiff's agent by attaching these horses to the walker under the circumstances described was testing a known and obvious danger.

In Anderson Uniform Commercial Code in the Note to § 2–714:31, Vol. 2, page 460, it is stated:

"As a general rule, damages which have been caused by the continued use of a defective article, after the buyer has become aware that it does not conform to a warranty, are not recoverable in an action or counterclaim based on breach of warranty. That is to say, in the absence of special circumstances, such as the seller's insistence on the continued use of the article or his denial that it is defective, or the likelihood of greater damages resulting to the buyer by discontinuing than by continuing its use, the purchaser has no right to continue using a defective article, after he has learned of the defect, if the result of such use is to increase the damage resulting from the defect."

Precode Pennsylvania Law and the decisions in the majority of the states appear to be in accord. See Annotation 33 A.L.R.2d p. 511: "A purchaser's use or attempted use of articles known to be defective as affecting damages recoverable for breach of warranty."

The court's attention has not been called to any Pennsylvania case post Uniform Commercial Code holding to this effect. However, the decisions in other states since the adoption of the Uniform Commercial Code appear to hold that in an action for breach of implied warranty contributory negligence is no defense but assumption of the risk is. See Annotation in 4 A.L.R.3d pages 501 and 510 entitled "contributory negligence or assumption of risk as defense to action for personal injury, death or prop-

erty damage resulting from alleged breach of implied warranty."

The Pennsylvania courts have clearly held that contributory negligence is not a defense to an action brought under 402(a) of the Restatement of Torts. See *Ferraro v. Ford Motor Company,* 423 Pa. 324, 223 A.2d 746 (1966). Here the court said: "After studied consideration, it appears to us that if the buyer knows of the defect and voluntarily and unreasonably proceeds to use the product or encounter a known danger, this should preclude recovery and constitute a complete defense to the action even in cases of strict liability." The question of adequacy of warnings in such cases is for the jury. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975).

■ In view of the clear holdings of the Pennsylvania Supreme Court to the effect that assumption of the risk is a defense to an action under 402(a) and the ruling of the Pennsylvania court that the Uniform Commercial Code is to be construed as co-extensive with 402(a), *Salvador v. Atlantic Steel Boiler Company,* 457 Pa. 24, 319 A.2d 903 (1974), the court determines that in a suit brought under the Uniform Commercial Code Pennsylvania would hold that assumption of a known and unreasonable risk is a defense to an action for breach of implied warranty. It is obvious that the Pennsylvania law controls in this diversity case inasmuch as the injuries occurred in Pennsylvania and the machine was constructed and installed in Pennsylvania.

■ The jury had the corroborated testimony to the effect that Phillips had been warned against the use of the walker with a two pronged plug connection and further it was shown that the horses were attached to the walker by means of steel chains instead of leather halters. The steel chains would readily conduct electricity and it was testified that this was an obvious danger. Beyond that if there was an exposed wire which caused this accident it was the result of the use of the walker by the plaintiffs and the uncovering of the wire by plain-

tiff's horses which caused the injuries and death.

Under these circumstances, we hold that the jury was amply justified in arriving at the conclusion that no cause of action had been made out and that the plaintiffs were barred from recovery.

An appropriate order denying new trial will be entered.